DeWine, J.
*449 {¶ 1} Ohio's Marketable Title Act generally allows a landowner who has an unbroken chain of title to land for a 40-year period to transfer title free of any interests that existed prior to the beginning of the chain of title. Under the act, however, an earlier-created interest is preserved if sufficient reference is made to the interest within that chain of title. The question we must answer is what type of reference is sufficient to preserve that interest.
{¶ 2} The landowners here seek to extinguish an oil-and-gas royalty interest created in 1915. A deed in their chain of title references the royalty interest as well as the original holder of the interest. The landowners argue that this reference is not sufficient to preserve the interest because it does not include either the volume and page number of the record in which the interest is recorded or the date on which the interest was recorded. We conclude that the plain language of the act does not require such specificity. We therefore affirm the court of appeals' decision that the landowners' title remains subject to the royalty interest.
*134 I. BACKGROUND
{¶ 3} In 1915, Nick and Flora Kuhn conveyed a 60-acre tract of property to W.D. Brown and his wife. The Kuhns reserved a royalty interest in the property by including the following language in the deed (the "Kuhn deed"): "Except Nick Kuhn and Flora Kuhn, their heirs and assigns reserve one half interest in oil and gas royalty in the above described Sixty (60) acres." Each succeeding conveyance of the property included language excepting the Kuhn royalty interest. Alfred Carpenter conveyed the property to David Blackstone in 1969, and as with the past conveyances, the deed included language about the royalty-interest reservation: "Excepting the one-half interest in oil and gas royalty previously excepted by Nick Kuhn, their [sic] heirs and assigns in the above described sixty acres." Nine or ten years later, Blackstone attempted to purchase the royalty interest from the Kuhn heirs, but negotiations failed. In 2001, Blackstone conveyed the property to himself and his wife Nicolyn Blackstone, again including the language excepting the royalty interest.
{¶ 4} In 2012, the Blackstones filed a complaint against the Kuhn heirs, seeking to quiet title and a declaration that the oil-and-gas royalty interest reserved in the Kuhn deed had been abandoned under the former and current *450 versions of the Dormant Mineral Act, R.C. 5301.56. Later, the Blackstones amended the complaint to seek a declaration that the rights also had been extinguished under the Marketable Title Act, R.C. 5301.47 et seq.
{¶ 5} The trial court granted summary judgment in favor of the Blackstones with regard to the claims relying on the former version of the Dormant Mineral Act and the Marketable Title Act, concluding that the Kuhns' royalty interest was extinguished under both acts. The Kuhn heirs appealed to the Seventh District Court of Appeals, which reversed the judgment of the trial court as to both claims.[1] 2017-Ohio-5704, 94 N.E.3d 108. Regarding the Marketable Title Act, the court concluded that the royalty interest had been preserved by the reservation language in the 1969 deed. Id. at ¶ 39.
{¶ 6} The Blackstones appealed, and we accepted jurisdiction over two propositions of law:
I. The specific identification contemplated in R.C. 5301.49(A) requires sufficient reference that a title examiner may locate the prior conveyance by going directly to the identified conveyance record in the recorder's office without checking conveyance indexes.
II. The exception to a person's marketable record title under R.C. 5301.49(A) does not include interests and defects, created by a recorded title transaction prior to the root of title, of which the person has actual knowledge, if the reference to such recorded title transaction is general rather than specific.
(Underlining sic.) See 152 Ohio St.3d 1406, 2018-Ohio-723, 92 N.E.3d 878.
II. ANALYSIS
A. The Marketable Title Act
{¶ 7} The Marketable Title Act was enacted to "simplify[ ] and facilitat[e] land *135 title transactions by allowing persons to rely on a record chain of title." R.C. 5301.55. Thus, the act provides that a person "who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest." R.C. 5301.48. The marketable record title "operates to extinguish such interests and claims, existing prior to the effective date of the root of title." R.C. 5301.47(A). (A "root of title" is "that conveyance or other title *451 transaction in the chain of title of a person * * * which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E).) The act facilitates title transactions, as the record marketable title "shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title." R.C. 5301.50.
{¶ 8} Balanced against the desire to facilitate title transactions is the need to protect interests that predate the root of title. To this end, the act provides that the marketable record title is subject to interests inherent in the record chain of title, "provided that a general reference * * * to * * * interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such * * * interest." R.C. 5301.49(A). It is the operation of this section that is at issue in this case.
B. The 1969 Deed Sufficiently Identifies the Royalty Interest
{¶ 9} The Blackstones' root of title is the 1969 deed conveying the property from Carpenter to Blackstone. They argue that the reference in the 1969 deed to the Kuhn royalty interest-"[e]xcepting the one-half interest in oil and gas royalty previously excepted by Nick Kuhn, their [sic] heirs and assigns in the above described sixty acres"-is not sufficiently specific to preserve the interest. Thus, the Blackstones maintain that their title is not subject to the interest. The question is what makes a reference to an interest sufficient to preserve that interest under the Marketable Title Act.
{¶ 10} The Blackstones urge us to create a bright-line rule prescribing what must be included in such a reference. They suggest that we require that a reference include the volume and page number of the record of the instrument that created the interest. Alternatively, they say that we should require, at the very least, a reference that includes the names of the grantor and the grantee and the date on which the instrument was recorded. The Blackstones contend that such a rule would be consistent with the act's purpose of simplifying title transactions, as it would shorten the length of time required to track down interests.
{¶ 11} To answer the question before us, we look to the plain language of R.C. 5301.49 :
Such record marketable title shall be subject to
(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general *452 reference in such muniments * * * to * * * interests created prior to the root of title shall not be sufficient to preserve them, unless *136 specific identification be made therein of a recorded title transaction which creates such * * * interest.
The statute thus starts with a limitation making title subject to all "interests and defects" in the muniments of the chain of title. (A deed constitutes "a muniment within the record marketable title." Toth v. Berks Title Ins. Co. , 6 Ohio St.3d 338, 341, 453 N.E.2d 639 (1983).) The initial limitation is then qualified by the provision that a "general reference" to an interest is not sufficient unless that "general reference" includes "specific identification" of the "recorded title transaction" that created the interest.
{¶ 12} The statute presents a three-step inquiry: (1) Is there an interest described within the chain of title? (2) If so, is the reference to that interest a "general reference"? (3) If the answers to the first two questions are yes, does the general reference contain a specific identification of a recorded title transaction? Here, the answer to the first question is yes: the 1969 deed that constitutes the root of title recites that it is subject to the royalty interest. Thus, we turn to the second question: is the reference a "general reference"?
{¶ 13} Because the term "general reference" is not defined in the act, we look to the ordinary meaning of the term. Stewart v. Vivian , 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 26. "General" is defined as "marked by broad overall character without being limited, modified, or checked by narrow precise considerations: concerned with main elements, major matters rather than limited details, or universals rather than particulars: approximate rather than strictly accurate." Webster's Third New International Dictionary 944 (2002).
{¶ 14} Our caselaw distinguishes between a general reference and a specific reference: if a reference is specific, it is not a general reference. See Toth , 6 Ohio St.3d at 341, 453 N.E.2d 639. "Specific" is defined as "characterized by precise formulation or accurate restriction (as in stating, describing, defining, reserving): free from such ambiguity as results from careless lack of precision or from omission of pertinent matter."Webster's Third New International Dictionary at 2187.
{¶ 15} The reference to the Kuhn royalty interest includes details and particulars about the interest in question. And the interest is accurately described. Moreover, the reference is "free from * * * ambiguity." Id. The exception that is noted in the 1969 deed includes information about the type of interest created-"one-half interest in oil and gas royalty" and specifies by whom the interest was originally reserved-"Nick Kuhn, their [sic] heirs and assigns." There is no question which interest is referenced in the 1969 deed. Thus, it is a specific *453 reference. Because the reference to the Kuhn heirs was not a general reference, there is no need to proceed to the third question-that is, whether a general reference contains a specific identification of a recorded title transaction.
{¶ 16} Much of the Blackstones' argument that the reference is insufficient is premised upon policy justifications for reading into R.C. 5301.49(A) a requirement that a reference include either the volume and page number where the interest was created or the date that the interest was recorded. They cite the burden of lengthy title searches, pointing out that to locate the Kuhn royalty interest, an examiner would have to review 11 or 12 volumes of conveyance indexes. But notably, the Blackstones do not suggest that the language used in the 1969 deed made it impossible *137 to find the original exception. They would be hard pressed to do so, as they in fact located the 1915 deed with the original language. Indeed, we have declined to view the act's purpose as solely to limit the length of time required for title searches. Heifner v. Bradford , 4 Ohio St.3d 49, 53, 446 N.E.2d 440 (1983), fn. 4. As one commentator put it shortly after the act was passed, "[t]he Act is designed to assure a reasonable title search, not to serve as a cure-all for title matters." Smith, The New Marketable Title Act , 22 Ohio St.L.J. 712, 717 (1961).
{¶ 17} The Blackstones' policy arguments regarding specificity are best directed to the legislature. That body, if it desired, could ordain that an interest created prior to the root of title is preserved only if a reference is made to the volume and page number where the interest was created. The legislature did just that in the Dormant Mineral Act when it provided that notice to holders of mineral interests must include the "volume and page number of the recorded deed or other recorded instrument under which the owner of the surface of the lands claims title or otherwise satisfies the requirements established in [ R.C. 5301.52(A)(3) ]." R.C. 5301.56(F)(2). Our role is to apply statutes as they are written, and nowhere does the Marketable Title Act require reference to the volume and page number or the date that the interest was recorded.
III. CONCLUSION
{¶ 18} We reject the Blackstones' first proposition of law and hold that a reference that includes the type of interest created and to whom the interest was granted is sufficiently specific to preserve the interest in the record title. The court of appeals therefore correctly held that the Kuhn royalty interest was preserved. Because our rejection of the Blackstones' first proposition of law is dispositive, we need not consider their second proposition.
Judgment affirmed.
O'Connor, C.J., and O'Donnell, Kennedy, French, and Fischer, JJ., concur.
DeGenaro, J., concurs, with an opinion.

With respect to the Dormant Mineral Act, the court of appeals concluded that the current version of the act applied, that the Kuhn heirs had acted to preserve their interests, and that therefore the Kuhn interest could not be deemed abandoned under the act. The Blackstones do not challenge this conclusion.