**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Erickson v. Morrison*, **Slip Opinion No. 2021-Ohio-746.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-746

ERICKSON ET AL., APPELLANTS, *v*. MORRISON ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Erickson v. Morrison*, Slip Opinion No. 2021-Ohio-746.]**

*Marketable Title Act—R.C. 5301.47 et seq.—Each title transaction in chain of title recites that conveyance is subject to a specific reservation of mineral rights—Root of title and subsequent conveyances are made subject to a specific, identifiable reservation of mineral rights recited throughout chain of title using the same language as recorded title transaction that created it—The reference to the reservation is therefore not a general reference insufficient to preserve reservation of mineral rights—Court of appeals' judgment reversed.*

(No. 2020-0244—Submitted January 13, 2021—Decided March 16, 2021.)

APPEAL from the Court of Appeals for Guernsey County,

No. 19CA18, 2019-Ohio-5430.

_____

**KENNEDY, J.**

**{¶ 1}** This discretionary appeal from a judgment of the Fifth District Court of Appeals presents the question whether a reference to a reservation of mineral rights in a surface landowner's root of title and in subsequently recorded title transactions is sufficiently specific to preserve the reservation of the mineral rights under Ohio's Marketable Title Act, R.C. 5301.47 et seq., when the reference does not name the record owner of those rights.

**{¶ 2}** Ohio's Marketable Title Act provides that an unbroken chain of title to land for a period of 40 years establishes marketable record title to the land, which generally extinguishes property interests that predate the landowner's root of title. R.C. 5301.47(A) and 5301.48. However, R.C. 5301.49(A) states that marketable record title is subject to all "interests and defects" inherent in the muniments of the chain of title, with the exception that a "general reference * * * to easements, use restrictions, or other interests created prior to the root of title" is not sufficient to preserve such an interest from being extinguished unless the general reference also includes "specific identification" of the recorded title transaction that created the interest.

**{¶ 3}** Nothing in R.C. 5301.49(A) provides that a reference to an interest in the muniments of title is a general reference that is insufficient to preserve the interest when it fails to include the interest owner's name. And in this case, the muniments of title contain a reference to a specific, identifiable reservation of mineral rights that can be determined through a reasonable title search. In contrast to general language stating that a conveyance is subject to any reservations that may—or may not—exist, the reservation in this case is recited throughout the chain of title using the same language as that used in the recorded title transaction that created the reservation. For these reasons, the reservation of mineral rights in this case is preserved by R.C. 5301.49(A).

**{¶ 4}** We therefore reverse the judgment of the Fifth District and reinstate the trial court's judgment.

**Facts and Procedural History**

{¶ 5} In February 1926, James T. and Rose L. Logan conveyed the surface rights to approximately 139 acres of land in Guernsey County to Edward and Alta Riggs. The Logans retained the mineral rights to the land's coal, oil, and gas through the following language in the deed: "Excepting and reserving therefrom all coal, gas, and oil with the right of said first parties, their heirs and assigns, at any time to drill and operate for oil and gas and to mine all coal." In February 1941, James T. Logan, then a widower, transferred the mineral rights to C.L. Ogle through execution of a deed specifically referring to the 1926 transaction. According to affidavits attached to their complaint, Sally A. Tonning (now deceased) and appellants, W. Randall and Kathleen Erickson, are Ogle's heirs.

{¶ 6} Between 1926 and 1975, the surface rights to the land were transferred five times through recorded instruments, with each instrument reciting the same "excepting and reserving" language from the 1926 deed (but omitting the word "said" before the term "first parties" on four of the instruments).

{¶ 7} A deed recorded on May 1, 1978, conveying the land from Margaret J. Morrison to appellees, Paul E. and Vesta G. Morrison, stated: "EXCEPTING AND RESERVING THEREFROM all coal, gas and oil with the right of first parties, their heirs and assigns, at any time to drill and operate for oil and gas and mine all coal." (Capitalization sic.) Subsequent transfers in the chain of title—from the Morrisons to themselves in joint tenancy with survivorship rights in 1983 and from the Morrisons to their respective trusts in 1998—reiterated this "excepting and reserving" language regarding the mineral rights in the land.

{¶ 8} On August 24, 2017, Tonning and the Ericksons filed this action in the Guernsey County Common Pleas Court to quiet title and for a declaratory judgment that they own the mineral rights to the land by virtue of the reservation. The Morrisons, individually and as co-trustees of their respective trusts, answered the complaint and counterclaimed for a declaration that the reservation of the

mineral rights had been extinguished under Ohio's Marketable Title Act or, alternatively, that the mineral rights were deemed abandoned under the 1989 version of R.C. 5301.56, Ohio's Dormant Mineral Act.

{¶ 9} The trial court granted the motion for judgment on the pleadings filed by Tonning and the Ericksons, declaring that they owned the mineral rights defined in the reservation and quieting title to the rights in their favor.[1]

{¶ 10} On appeal to the Fifth District, the Morrisons asserted one assignment of error: "The trial court erred when it held that the severed mineral interest at issue was preserved from extinguishment under the Ohio Marketable Title Act." 2019-Ohio-5430, 151 N.E.3d 110, ¶ 21. The court of appeals agreed and reversed the trial court's judgment, explaining that "the Reservation does not state by whom the interest was originally reserved, nor to whom the interest was granted. * * * Repetition of the Reservation does not endow it with the missing information, nor does it transform the Reservation from general to specific." *Id.* at ¶ 40.

{¶ 11} We accepted the Ericksons' appeal[2] to review two propositions of law:

> 1. The Marketable Title Act does not require that a reservation set forth the name of the person holding the interest in order to be specific and preserve the interest.

---

1. The trial court entered a default judgment against other parties named in the complaint and a first amended complaint. It also granted judgment on the pleadings against Susan George (f.k.a. Susan Logan), who had or may have claimed an interest in the mineral rights as the heir to James T. and Rose L. Logan. George has not filed a brief or otherwise appeared in this court in this matter.

2. According to a suggestion of death filed in the court of appeals below, Tonning passed away on July 2, 2019, while this case was pending on direct appeal. Her estate has not appeared as a party in the court of appeals or in this court.

> 2. A property holder's fee simple interest is preserved under the Marketable Title Act where the party seeking relief under the Marketable Title Act had actual knowledge of the interest.

*See* 158 Ohio St.3d 1487, 2020-Ohio-1634, 143 N.E.3d 527. Because the resolution of the first proposition of law resolves this case, it is not necessary for this court to reach the second proposition of law.

**Positions of the Parties**

{¶ 12} The Ericksons maintain that neither R.C. 5301.49 nor our caselaw construing it requires a reservation to include the name of the owner of a mineral interest in order for the interest to be preserved under Ohio's Marketable Title Act. Even in the absence of a specific name in the reservation, they contend, a title search would reveal the owner of the reservation "by a simple review of the chain of title, reading the Reservation Deed filed in 1926, and searching that Reservation Deed forward in time." According to the Ericksons, the owner of the reservation can be determined through the chain of title, and therefore the reservation "is a 'specific reference' and is distinguishable from a general reference to 'easements of record' or another catch-all." The reservation is not a "general reference" under R.C. 5301.49(A), they conclude, because "the reference accurately and unambiguously describes the interest at issue," and for this reason, it was not extinguished under the Marketable Title Act.

{¶ 13} The Morrisons rely on our decision in *Blackstone v. Moore*, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, ¶ 16-18, for the proposition that when a reference to an interest created prior to the root of title does not provide the relevant conveyance index's volume and page, the reference is sufficient to preserve the interest only if it includes both the type of interest created and the name of its owner. The Morrisons contend that under the Marketable Title Act, a title examiner needs to review only the language of the root of title and the instruments

recorded during the 40 years subsequent to the root of title to locate any specific references to an interest predating the root of title. And here, they argue, the prior interest cannot be located without a more extensive search, since none of the recorded title transactions within the relevant 40-year period refer to the Ericksons. According to the Morrisons, repetition of a pre-root-of-title interest in subsequently recorded title transactions with neither a reference to the named owners of the interest nor the recording information of the instrument creating it does not preserve that interest. As argued by the Morrisons, "Because there is nothing contained within the repetitions cluing the reader as to the owner of the pre-root interest, they are not specific references."

{¶ 14} Based on those arguments, we address a single, dispositive question of law: whether a reference to a reservation of mineral rights in a surface landowner's root of title and in subsequently recorded title transactions is a "general reference" that is insufficient to preserve the reservation pursuant to R.C. 5301.49(A) if it does not name the owner of the reserved rights.

**Law and Analysis**

{¶ 15} Reviewing the meaning of R.C. 5301.49(A) returns us to a familiar place: statutory interpretation. As we explained long ago, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Rather, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 16} The General Assembly enacted Ohio's Marketable Title Act, R.C. 5301.47 et seq., in 1961 to extinguish stale interests and claims in land that existed

prior to the root of title, with "the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title," R.C. 5301.55. The legislation provides that marketable record title—an unbroken chain of title to an interest in land for 40 years or more, R.C. 5301.48—"shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title." R.C. 5301.50. Marketable record title therefore "operates to extinguish" all other prior interests. R.C. 5301.47(A).

{¶ 17} R.C. 5301.49(A), however, provides that record marketable title is nonetheless subject to the following:

> All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest * * *.

The "root of title" is "that conveyance or other title transaction in the chain of title of a person * * * which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E).

{¶ 18} In *Blackstone*, we explained that R.C. 5301.49(A) addresses "the need to protect interests that predate the root of title." 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, at ¶ 8. We noted that the statute creates a three-step inquiry: "(1) Is there an interest described within the chain of title? (2) If so, is the reference to that interest a 'general reference'? (3) If the answers to the first two

questions are yes, does the general reference contain a specific identification of a recorded title transaction?" *Id.* at ¶ 12.

{¶ 19} Applying our test in *Blackstone* here, the answer to the first question is yes—the muniments in the chain of title state that the surface rights in the land are subject to a reservation of mineral rights. We therefore turn to the second question: is the reference to the reservation a general reference?

{¶ 20} In *Blackstone*, we recognized that the Marketable Title Act does not define the term "general reference" and we therefore applied the ordinary meaning of the word "general," which "is defined as 'marked by broad overall character without being limited, modified, or checked by narrow precise considerations: concerned with main elements, major matters rather than limited details, or universals rather than particulars: approximate rather than strictly accurate.' " *Blackstone* at ¶ 13, quoting *Webster's Third New International Dictionary* 944 (2002).

{¶ 21} We also pointed out that our caselaw distinguishes between a general reference and a specific one. *Blackstone*, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, at ¶ 14. *See also Toth v. Berks Title Ins. Co.*, 6 Ohio St.3d 338, 341, 453 N.E.2d 639 (1983) ("Any interest or defect which is referred to specifically in a muniment within the marketable record title of a parcel of property, as defined by R.C. 5301.48, is not extinguished by the Ohio Marketable Title Act"). Therefore, we were also guided in *Blackstone* by the ordinary meaning of the word "specific," which is defined as " 'characterized by precise formulation or accurate restriction (as in stating, describing, defining, reserving): free from such ambiguity as results from careless lack of precision or from omission of pertinent matter.' " *Blackstone* at ¶ 14, quoting *Webster's Third New International Dictionary* at 2187.

{¶ 22} In determining whether the reference at issue in *Blackstone* was general or specific, we declined to establish a bright-line rule that an interest created prior to the root of title is preserved only if a reference to it includes "either the

volume and page number where the interest was created or the date that the interest was recorded." *Id.* at ¶ 16. We explained, "Our role is to apply statutes as they are written, and nowhere does the Marketable Title Act require reference to the volume and page number or the date that the interest was recorded." *Id.* at ¶ 17.

{¶ 23} We concluded that the reference at issue in *Blackstone* was specific, not general, because the root of title included "information about the type of interest created * * * and specifie[d] by whom the interest was originally reserved * * *. There is no question which interest is referenced in the * * * deed. Thus, it is a specific reference." *Id.* at ¶15.

{¶ 24} Relying on *Blackstone*, the Morrisons maintain that a reference to a reservation of mineral rights is insufficient to preserve the reservation under R.C. 5301.49(A) if it does not include either the recording information of the instrument creating the reservation or the name of its owner. But although we recognized in *Blackstone* that the reference in that case was "sufficiently specific" to determine that the preexisting mineral interest had been preserved because it named the owner of the reserved interest, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, at ¶ 18, we did not hold that a reference is *required* to identify both the type of interest and by whom it is reserved to preserve the interest.

{¶ 25} As in *Blackstone*, we begin here with the words of the statute. Nothing in the plain language of Ohio's Marketable Title Act provides that a recital of a prior interest is a general reference subject to being extinguished if it does not name the interest's owner. Language can refer to a specific interest in the chain of title without including a name, just as it can be sufficiently specific without "the volume and page number where the interest was created or the date that the interest was recorded," *id.* at ¶ 16.

{¶ 26} In addition, we have explained that " '[i]n ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.' " (First brackets

added in *Turner*.) *State v. Turner*, ___ Ohio St.3d ___, 2020-Ohio-6773, ___ N.E.3d ___, ¶ 18, quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

{¶ 27} As noted, R.C. 5301.49(A) does not expressly require a reference to a prior interest to include the name of the interest's owner. And former R.C. 5301.51(A), enacted as part of the same legislative scheme, created a method to preserve interests predating the root of title by permitting a person claiming an interest in land to record "a notice in writing, duly verified by oath, setting forth the nature of the claim," Am.H.B. No. 81, 129 Ohio Laws 1040, 1045. Neither statute required the record owner of a preexisting interest to be specifically named in the instrument.

{¶ 28} In 1988, however, the General Assembly amended the Marketable Title Act to require greater specificity in order for recorded notices to preserve preexisting interests. *See* Am.Sub.H.B. No. 502, 142 Ohio Laws, Part III, 4068, 4069-4070. That legislation established the current versions of R.C. 5301.51(A) and 5301.52(A), which require a notice of preservation filed under R.C. 5301.51 to "[s]tate the nature of the claim to be preserved and the names and addresses of the persons for whose benefit the notice is being filed," R.C. 5301.52(A)(2); "[c]ontain an accurate and full description of all land affected by the notice," R.C. 5301.52(A)(3); and "[s]tate the name of each record owner of the land affected by the notice, at the time of its recording, together with the recording information of the instrument by which each record owner acquired title to the land," R.C. 5301.52(A)(4).

{¶ 29} But when the General Assembly amended the requirements for recording a notice of preservation to include the name of the interest's owner, a description of the property affected, and the recording information creating a property interest affected by the notice, it did not also amend R.C. 5301.49(A) to require that a reference in the muniments of title contain that same information in

order to preserve a preexisting interest from being extinguished after 40 years from the root of title. The General Assembly could have—but did not—require that specificity, and we may not add that requirement to the statute now under the guise of statutory interpretation. *See McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, 144 N.E.3d 369, ¶ 30.

{¶ 30} Moreover, as one commentator (who we quoted in *Blackstone* with approval, *see* 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, at ¶ 16) has noted, R.C. 5301.49(A) is directed at the "common conveyancing practice for draftsmen to include in the deed description some such language as 'subject to easements and use restrictions of record.' " Smith, *The New Marketable Title Act*, 22 Ohio St.L.J. 712, 717 (1961). Dean Allan F. Smith explained that "[t]his is a device which is probably adequate to protect the grantor from liability on his covenants for title in a warranty deed should there be burdens of that type on record. This throws the risk of title search on the purchaser." *Id*. But such a general reference leaves it unclear whether a prior interest in fact exists. And as Dean Smith stated, "The Ohio Act * * * wisely adopted the provision in the Model Act which makes such a general reference inadequate to preserve the ancient interests even though the general reference appears in the muniments of title which make up the forty year chain." *Id.*

{¶ 31} Therefore, contrary to the conclusion reached by the Fifth District, a recitation of a preexisting interest in a recorded title transaction is not a general reference that is insufficient to preserve the interest under the Marketable Title Act simply because it does not name the owner.

{¶ 32} In this case, each of the title transactions in the Morrisons' chain of title recite that the conveyance is subject to a specific reservation of the mineral rights. Unlike the general reference Dean Smith described in his article, the transfer of the surface rights does not contain vague, boilerplate language excepting any reservations that may—or may not—exist. Rather, the Morrisons' root of title and

subsequent conveyances are made subject to a specific, identifiable reservation of mineral rights recited throughout their chain of title using the same language as the recorded title transaction that created it. The reference to the reservation is therefore not a general reference, and there is no need to reach the third question articulated by this court in *Blackstone*, i.e., whether a general reference specifically identifies the relevant recorded title transaction, *see Blackstone* at ¶ 12.

**Conclusion**

{¶ 33} Through Ohio's Marketable Title Act, the General Assembly sought to balance the goals of simplifying and facilitating land-title transactions, R.C. 5301.55, with the need to protect the fundamental right to private property enshrined in the Ohio Constitution, *see Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 38; *Blackstone*, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, at ¶ 8.

{¶ 34} It is the function of the General Assembly to balance such competing interests when enacting legislation. *McConnell*, 158 Ohio St.3d 388, 2019-Ohio-4740, 144 N.E.3d 369, at ¶ 32. Second-guessing the wisdom of the legislature's policy choices in striking that balance does not fall within the scope of our review. *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 20. Rather, "[o]ur role, in exercise of the judicial power granted to us by the Constitution, is to interpret and apply the law enacted by the General Assembly." *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 29.

{¶ 35} In enacting R.C. 5301.49(A), the General Assembly did not require a reference to an interest predating the root of title to name the interest's owner in order to preserve the interest. The legislature could have added that requirement as a condition of preserving a preexisting interest, as it did in R.C. 5301.51(A) and 5301.52(A). But the General Assembly chose not to do so, and we may not impose such a requirement by judicial fiat. In this case, the root of title and subsequent

12

conveyances of the surface rights are made subject to a specific, identifiable reservation of mineral rights using the same language that created it. Notwithstanding its failure to name the owner of the reserved rights, this reference is sufficient to preserve them from being extinguished under Ohio's Marketable Title Act.

{¶ 36} For these reasons, we reverse the judgment of the Fifth District Court of Appeals and reinstate the judgment on the pleadings rendered by the trial court.

Judgment reversed.

O'CONNOR, C.J., and FISCHER, DEWINE, STEWART, and BRUNNER, JJ., concur.

DONNELLY, J., concurs in judgment only.

————————————

Kegler, Brown, Hill & Ritter Co., L.P.A., John P. Brody, William J. Levendusky, and Jane K. Gleaves, for appellants.

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Gregory W. Watts, and Matthew W. Onest, for appellees.

Theisen Brock, L.P.A., Daniel P. Corcoran, and Kristopher O. Justice, urging affirmance for amici curiae, Doris Craig, Paul Craig, Eleanor Craig, Nina Ice, Terry Ice, Sheila Stollar, Roger Stollar, Lisa Meyer, Kenneth Meyer Jr., Helen Craig, Evelyn Craig, Carissa R. Baker, and Corey A. Stollar.

————————————