[Cite as *Wolfe v. Bounty Minerals, L.L.C.*, 2024-Ohio-2460.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## HARRISON COUNTY

KARLA WOLFE ET AL.,

Plaintiffs-Appellees,

v.

BOUNTY MINERALS LLC, ET AL.,

Defendants,

v.

JAMES COFFELT ET AL.,

Third-Party Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 HA 0005**

---

Civil Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CVH 2021-0071

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Sara E. Fanning* and *Atty. David J. Wigham*, Roetzel & Andress, LPA, for Plaintiffs-Appellees and

*Atty. Kevin L. Colosimo* and *Atty. Christopher W. Rogers*, Frost Brown Todd LLC, for Defendant Appellee and

*Atty. Daniel P. Corcoran*, Theisen Brock, for Third-Party Defendants-Appellants.

Dated: June 27, 2024

---

**HANNI, J.**

{¶1} Third-Party Defendants-Appellants James Coffelt and Shelley Coffelt (the "Coffelts") appeal the Harrison County Court of Common Pleas denial of their motion for summary judgment and the granting of summary judgment in favor of Plaintiffs-Appellees Karla Wolfe, Robin Damer, Norma Jean Dobson, Robert H. Wechtel, Laurel Yardy, Stephen Van Sciver, Judith Goodgame, Heidi J. Wooters, Rebecca J. Jones, Julie K. Crawford, Daniel T. Wills, Christopher B. Wills, and Anthony J. Wills (the "Holmes Heirs").

{¶2} On appeal, the Coffelts assert that the trial court erred by applying the incorporation by reference doctrine to expand the preservation of the Holmes Heirs' interest under R.C. 5301.49(A) of the Marketable Title Act (MTA). The Holmes Heirs counter that the court properly gave effect to the words used in the 1966 Consolidation Deed and complied with Ohio law on deed construction.

{¶3} For the following reasons, we affirm the trial court's judgment in favor of the Holmes Heirs.

## RELEVANT FACTS

{¶4} The parties agree that on April 12, 1921, Wesley A. Holmes and his wife conveyed 243.15 acres of land in two tracts (the "Property") to Emerson W. Long. The deed ("1921 Holmes Deed"), which was recorded in the Harrison County Deed Records, included the following language:

SAVING AND EXCEPTING* * *, the following: All the oil and gas in and under the above described tracts of land, with the right at all times for the party of the first part (W.A. Holmes) his heirs or assigns, to enter upon said premises for the purpose of drilling for oil, gas, water or other coals, and

with the right to lay pipe lines, erect power houses, tanks, machinery, etc sueful [sic] and necessary in operating for oil and gas.

("the Holmes Interest").

{¶5}  On April 1, 1924, Emerson W. Long and his wife conveyed the Property to The Short Creek Coal Company by warranty deed recorded on June 30, 1924 ("Long Deed") in the Harrison County Deed Records.  The Long Deed quoted the oil and gas exception and reservation of the Holmes Interest.

{¶6}  On July 8, 1930, W. Glover Porter was appointed Special Master to sell the Property through a decree in favor of The Guardian Trust Company, Trustee under the first mortgage of The Short Creek Coal Company.  The Special Master conveyed the Property to The Harrison County Investment Company through deed and it was recorded in the Harrison County Deed Records.  ("Special Master's Deed").  This Deed quoted the oil and gas exception and reservation of the Holmes Interest.

{¶7}  On July 29, 1940, The Harrison County Investment Company conveyed the Property to The National City Bank of Cleveland, as Trustee, in a warranty deed ("HCIC Deed"), which was recorded in Harrison County Deed Records.  This Deed contains the oil and gas exception and reservation of the Holmes Interest.

{¶8}  On January 22, 1945, Trustee National City Bank of Cleveland conveyed the Property to Hanna Coal Company ("HCC") via Special Warranty Deed.  ("HCC Deed").  The Special Warranty Deed was recorded on April 6, 1945.

{¶9}  Hanna Coal Company changed its name to Hanna Lands Company, and this change was recorded on July 19, 1946.

{¶10}  On November 23, 1949, Hanna Lands Company conveyed the Property to Pittsburgh Consolidation Coal Company ("PCCC") via deed recorded on April 4, 1950 in Harrison County Deed Records.  ("1950 Hanna Lands Deed").  PCCC changed its name to Consolidation Coal Company ("CCC"), which was recorded in the Harrison County Special Records.  The 1950 Hanna Lands Deed contains the exact oil and gas exception and reservation from the 1921 Holmes Deed.

{¶11} PCCC conveyed the Property and other lands to Consolidation Coal Company ("CCC") in a deed recorded September 12, 1966 in Harrison County Deed

Records.  ("1966 Consolidation Deed").  The effective date was September 15, 1966. This Deed contained no legal description of the Property, but stated:

> Reference is hereby expressly made to each particular instrument described in this Exhibit A, to its record, and to all prior instruments of record described or referred to in each such instruments and their records, for a further description of the properties, interests or rights covered thereby, including individual metes and bounds descriptions, specification of mining rights and waivers of surface support, and for all the terms and conditions of such instruments and the source of title reflected thereby, as fully and to the same extent as though each of such instruments and the descriptions, terms and conditions thereof were fully set forth and described herein.

**{¶12}**  Exhibit A identifies the 1950 Hanna Lands Deed by identifying the grantor and grantee, the date of the instrument, and the deed volume and page numbers.  The 1950 Hanna Lands Deed contains the specific Holmes Interest language.

**{¶13}**  On December 23, 1986, CCC conveyed the Property to The Conservation Fund in a deed recorded March 5, 1987 in Harrison County Deed Records.  ("1987 Conservation Deed").  CCC excepted and reserved the oil and gas in the Property in this Deed to itself.  This was the subject of Counts VI and VII of the Holmes Heirs' complaint and Count 1 of the Coffelts' cross-claim.  It was resolved in 2023 via a Disclaimer of Interest filed by Consol Mining Company, LLC and CNX Gas Company, LLC and by Ascent Utica Minerals LLC.   (The Coffelts' Br. at 4, fn. 1).

**{¶14}**  On January 25, 1989, CCC conveyed the oil and gas in the Property to The Conservation Fund in a limited warranty deed recorded on March 2, 1989.

**{¶15}**  On September 8, 2009, The Conservation Fund conveyed the Property to James Coffelt in a Limited Warranty Deed recorded September 24, 2009 in Harrison County Official Records.  ("2009 Conservation Deed").  In this deed, the Conservation Fund excepted and reserved the oil and gas to itself.

**{¶16}**  The Conservation Fund believed that it transferred the oil and gas that it reserved in the 2009 Conservation Deed to RJR Resources, LLC, Windhaven Interests,

LLC, Blackhawk Minerals, LLC, MC Mineral Company, LLC, and Chesapeake Exploration, LLC (collectively, "The Litigation Parties").

**{¶17}** On February 11, 2014, James Coffelt filed a complaint against The Litigation Parties in the Harrison County Common Pleas Court in Case Number CVH-2014-0016 ("2014 Case"). An agreed judgment entry was filed which quieted title to the oil and gas for the Property in James Coffelt. (2014 Judgment Entry). This was recorded on October 29, 2014 in the Harrison County records.

**{¶18}** On October 27, 2015, James Coffelt conveyed 50% of the oil and gas to MC Mineral Company LLC. ("MC Mineral Deed").

**{¶19}** MC Mineral Company conveyed a 1.25% non-participating loyalty interest in the Property and other land to RJR Resources, LLC, Windhaven Interests, LLC, and Blackhawk Minerals, LLC in a non-participating royalty interest conveyance recorded on January 26, 2016.

**{¶20}** On November 19, 2015, James Coffelt conveyed by deed his remaining 50% of the oil and gas in the Property to Bounty Minerals III Acquisitions LLC. ("Bounty Deed"). Bounty Minerals III Acquisitions LLC merged into Bounty, with the merger recorded on March 23, 2017. Bounty leased its 50% interest to Salt Fork Resources, LLC, and a memorandum of lease was recorded on October 10, 2017. Salt Fork Resources, LLC assigned its rights to Salt Fork Resources Operating LLC in a recorded assignment dated June 29, 2018. Salt Fork Resources Operating LLC merged into Ascent Resources-Utica, LLC by affidavit recorded on September 12, 2018.

**{¶21}** MC Mineral Company conveyed all of its interest in the minerals in the Property and other land to EAP Ohio, LLC, in a mineral deed recorded on December 21, 2018.

**{¶22}** EAP Ohio, LLC leased 50% of its oil and gas interest in a divided 163.15 portion of the Property to itself, and a Memorandum of Oil and Gas Lease was recorded on August 7, 2020.

## PROCEDURAL HISTORY

**{¶23}** On August 5, 2021, the Holmes Heirs filed a complaint against Bounty Minerals, EAP Ohio, LLC, RJR Resources, LLC, Windhaven Interests, LLC, Blackhawk

Minerals LLC, Ascent Resources-Utica, LLC, Consol Mining Company, LLC, CNX Gas Company, LLC, and Ascent Utica Minerals, LLC. The Holmes Heirs set forth the chain of title to the Property and the oil and gas interests, as well as their individual ownership interests, beginning with Wesley Holmes and his wife, and, upon their deaths, their children, Edith Holmes, Alberta Wood, and Mary Carle.

{¶24} The Holmes Heirs stated that each of them filed an affidavit of preservation of their interest and preserved ownership of the oil and gas interests. They outlined the leases they each entered into with various companies for their oil and gas interests.

{¶25} Although the Holmes Heirs set forth six counts in their complaint, the Coffelts appeal only the second count concerning the MTA.

{¶26} In Count II of their complaint, the Holmes Heirs acknowledged that under the MTA, a root of title is determined by the chain of title conveyance that a claimant relies on as a basis for marketability of title, and which was the most recently recorded conveyance as of a date forty years prior to the time when marketability is being determined. The Holmes Heirs asserted that marketability is determined as of the date of the complaint, and thus, the deed recorded most recently and prior to 40 years before the 2021 date of the filing of the complaint was the Hanna Lands Deed recorded on April 4, 1950.

{¶27} The Holmes Heirs requested that the court declare the 1950 Hanna Lands Deed as the root of title. They concluded that since this Deed specifically referred to the Holmes Interest, it preserved the Holmes Interest from extinguishment by the MTA.

{¶28} The Holmes Heirs alleged that the 1966 Consolidation Deed recorded on September 12, 1966 was not the root of title because it lacked a description of the Property and therefore did not "purport[ ] to create the interest claimed by the defendants." In the alternative, they asserted that even if the 1966 Consolidation Deed was the root of title, it contained a specific reference to the Holmes Interest and their interest was preserved from MTA extinguishment.

{¶29} On August 21, 2021, Bounty answered the complaint and filed a third-party complaint against the Coffelts asserting breach of warranty.

Case No. 23 HA 0005

{¶30} On August 26, 2021, RJR Resources, LLC, Windhaven Interests LLC, and Blackhawk Minerals, LLC, answered the complaint. Ascent Utica and Ascent Utica Minerals answered as well.

{¶31} The Coffelts answered Bounty's third-party complaint, cross-claimed Consol, CNX, and Ascent Utica Minerals LLC, and counterclaimed against the Holmes Heirs.

{¶32} In the first claim of their counterclaim, the Coffelts requested a declaratory judgment that Consol, CNX, and Ascent Utica Minerals LLC owned no interest in the oil and gas under the Property.

{¶33} In their second claim, they requested that the court find that the Conservation Fund's marketable record title to the Property extinguished any Holmes Interest under the MTA. The Coffelts asserted that the 1966 Consolidation Deed was in the Conservation Fund's chain of title and it had an unbroken chain of title to the Property for 40 years or more. They asserted that the 1966 Consolidation Deed created the interest claimed by the Conservation Fund and the Conservation Fund relied on that deed for the marketability of its title to the Property. Thus, they concluded that the existence of the Holmes Interest depended on a title transaction that occurred prior to the effective date of the 1966 Consolidation Deed and was therefore extinguished.

{¶34} The Coffelts further alleged that since the Holmes Heirs did not file a notice of preservation in the 40 years after the effective date of the 1966 Consolidation Deed, the MTA extinguished the Holmes Interest. The Coffelts asserted that the conveyances in the Conservation Fund's chain of title to RJR Resources, LLC, Windhaven Interests, LLC, Blackhawk Minerals, LLC, MC Mineral Company, LLC, and Chesapeake Exploration LLC, rendered them owners of record to the oil and gas under the Property.

{¶35} The Coffelts requested in their third claim that the court find that the Holmes Interest was abandoned under the Ohio Dormant Mineral Act. In their fourth claim, the Coffelts alleged common law abandonment. In the fifth claim, the Coffelts requested that the court quiet title in the grantees under the MC Mineral Deed and the Bounty Deed and against the Holmes Heirs.

{¶36} The Holmes Heirs replied to the counterclaim on October 14, 2021.

{¶37} On December 14, 2021, Consol filed an answer to the Coffelts' cross-claim.

– 8 –

**{¶38}** On May 18, 2023, the trial court ordered and declared, based on the agreement of the parties, that Consol and CNX disclaimed any interest and owned no interest in the Property. On May 25, 2023, the trial court ordered, based on the agreement of the parties, that Ascent Utica Minerals disclaimed any interest in the Property. Ascent-Resources-Utica, LLC remained a party.

**{¶39}** On June 5, 2023, the Holmes Heirs filed a motion for summary judgment on all claims in their complaint and on the second, third, fourth, and fifth claims of the Coffelts' counterclaim.

**{¶40}** On June 7, 2023, the Coffelts filed a motion for partial summary judgment. They moved for summary judgment on Count II of their counterclaim against the Holmes Heirs and requested that the court declare the Holmes Interest extinguished under the MTA. The Coffelts requested that the court declare that the grantees under the MC Mineral Deed and the Bounty Deed took title to the oil and gas interest in and under the Property free and clear of the Holmes Interest. They moved under Count V of their counterclaim to quiet title to the oil and gas under the Property in the names of the grantees under the deeds referenced. The Coffelts further moved to dismiss Bounty Minerals LLC's third-party complaint in full.

**{¶41}** Bounty Minerals, LLC filed a notice of adoption of the Coffelts' motion for summary judgment on June 12, 2023.

**{¶42}** Ascent Resources-Utica, LLC filed a brief in opposition to the Coffelts' motion for summary judgment and the Holmes Heirs filed a response in opposition as well.

**{¶43}** The Coffelts and the Holmes Heirs filed replies in support of their summary judgment motions.

**{¶44}** After a hearing on the motions for summary judgment, the trial court issued its August 30, 2023 judgment entry incorporating findings of fact and conclusions of law. The court granted summary judgment to the Holmes Heirs, finding that the Holmes Interest was not abandoned by the DMA and was not extinguished by the MTA. The court held that the Holmes Heirs are the collective owners of the Holmes Interest, which was all of the oil and gas in and under the Property. The court quieted title to the oil and gas

to the Holmes Heirs.  The court further found that the Bounty and EAP leases were null and void.

**{¶45}**  Bounty Minerals filed a motion for the court to revise its judgment entry, and the parties subsequently agreed that Bounty Minerals would withdraw this motion and the remaining matters concerning its third-party complaint would be stayed until the instant appeal was determined.  (Agreed J.E. Oct. 23, 2023).  The August 30, 2023 judgment entry contains the proper Civ. R. 54(B) language for appellate review.

## SOLE ASSIGNMENT OF ERROR

**{¶46}**  On September 25, 2023, the Coffelts filed a notice of appeal.  They present the following assignment of error:

> **THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS AND IN DENYING SUMMARY JUDGMENT IN FAVOR OF THIRD-PARTY DEFENDANTS, JAMES AND SHELLEY COFFELT (THE "COFFELTS"), AND DEFENDANT BOUNTY MINERALS, LLC ("BOUNTY").**

## STANDARD OF REVIEW

**{¶47}**  An appellate court reviews a summary judgment ruling de novo.  *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.  Thus, we apply the same test as the trial court in determining whether summary judgment was proper.

**{¶48}**  A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party.  *Mercer v. Halmbacher*, 2015-Ohio-4167, 44 N.E.3d 1011, ¶ 8 (9th Dist.); Civ.R. 56(C).

**{¶49}**  The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C).  *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996).  A "material fact" depends on the substantive law of the claim being litigated.  *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d 598, 603, 662

N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶50} If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

## RELEVANT MTA LAW

{¶51} The MTA was enacted to simplify and facilitate land title transactions "by allowing persons to rely on a record chain of title." *Erickson v. Morrison*, 165 Ohio St.3d 76, 2021-Ohio-746, 176 N.E.3d 1. It extinguishes stale interests and land claims that existed prior to the root of title. *Cattrell Fam. Woodlands, LLC v. Baruffi,* 2021-Ohio-4660, 184 N.E.3d 186, ¶ 12 (7th Dist.). The MTA provides that a person who has an unbroken chain of title of record to any interest in land for at least 40 years has a "marketable record title" to the interest. R.C. 5301.48.

{¶52} With few exceptions, a marketable record title "operates to extinguish" all interests and claims that existed prior to the effective date of the root of title. The MTA extinguishes property interests by operation of law after 40 years from the effective date of the root of title unless a savings event has occurred. *Corban v. Chesapeake Exploration, L.L.C.*, 2016-Ohio-5796, 149 Ohio St.3d 512, 76 N.E.3d 1089, ¶ 18. An interest that has been extinguished by operation of the MTA cannot be revived. *See* R.C. 5301.49(D).

{¶53} R.C. 5301.49 provides circumstances in which a marketable record title will remain subject to interests that existed prior to the root of title. Those exceptions, called savings events, " 'serve as a shield to protect' " the excepted interests from extinguishment*. Spring Lakes, Ltd. v. O.F.M. Co.,* 12 Ohio St.3d 333, 335, 467 N.E.2d 537 (1984), quoting *Heath v. Turner*, 309 N.C. 483, 493, 308 S.E.2d 244 (1983).

{¶54} R.C. 5301.49 provides exceptions, or savings events, to the extinguishment of interests under the MTA. Those savings events include:

(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest;

(B) All interests preserved by the filing of proper notice or by possession by the same owner continuously for a period of forty years or more, in accordance with section 5301.51 of the Revised Code;

* * *

(D) Any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started; provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 5301.50 of the Revised Code;

* * *.

{¶55} The Coffelts contend that when The Conservation Fund sold the Property to James Coffelt in 2009, it had a recorded, unbroken chain of title to the Property that went back to the 1966 Consolidation Deed. The Coffelts submit that the MTA extinguished the Holmes Interest because that interest depended on a transaction from the 1921 Holmes Deed and was not preserved under any exception in R.C. 5301.49.

{¶56} They cite the three-part test in *Blackstone v. Moore*, 155 Ohio St. 3d 448, 2018-Ohio-4959, 122 N.E.3d 132, ¶ 12, for determining whether a mineral interest was preserved: "(1) Is there an interest described within the chain of title? (2) If so, is the reference to that interest a "general reference"? (3) If the answers to the first two questions are yes, does the general reference contain a specific identification of a recorded title transaction?" Applying *Blackstone*, the Coffelts concede that all deeds in

the chain of title between the 1921 Holmes Deed and the 1950 Hanna Lands Deed specifically referred to the Holmes Interest and the Holmes Interest was preserved.

{¶57} However, they contend that while the 1966 Consolidation Deed states that the Property may be subject to other prior interests of record, it does not specifically refer to the Holmes Interest. They contend that the Deed's reference to "all prior instruments of record," is the type of reference that the Ohio Supreme Court deems a general reference under *Blackstone* because it " 'throws the risk of title search on the purchaser.' " *Erickson v. Morrison*, 165 Ohio St.3d 76, 2021-Ohio-746, 176 N.E.3d 1, ¶ 30, quoting *Smith, The New Marketable Title Act*, 22 Ohio St. L.J. 712, 717 (1961).

{¶58} The Coffelts explain that we must construe the MTA in harmony with R.C. 5301.11, which requires that all deeds include a prior instrument reference. R.C. 5301.11 states that "[a] recorded grant, reservation, or agreement creating an easement * * * shall contain a reference by volume and page to the record of the deed or other recorded instrument under which the grantor claims title." They interpret this to mean that every deed must contain a reference to the next prior instrument.

{¶59} They assert that the trial court erroneously expanded the scope of the MTA statute by applying the incorporation by reference doctrine. They posit that the trial court added to the MTA statute by essentially stating that record marketable title is subject to "[a]ll interest and defects which are inherent in, *[or incorporated by reference into]*, the muniments of which such chain of record title is formed." (Coffelts' Br. at 15, emphasis and words added).

{¶60} The Coffelts conclude that narrowly construing the exceptions to the MTA achieves its legislative purpose of simplifying land title transactions. They submit that if we allow the incorporation by reference to "all prior instruments of record," then future deeds would be drafted in this general manner to exempt a property's chain of title from operation of the MTA without describing or identifying prior interests in any way.

{¶61} The Coffelts also request the rejection of Ascent Resources-Utica's argument that the Holmes Interest was preserved under the MTA by the specific identification of it in the 1950 Hanna Lands Deed, which was incorporated by reference into the 1966 Consolidation Deed's specific identification of the 1950 Hanna Lands Deed by volume and page number. They argue that the MTA could have stated that prior

interests would be preserved if they were merely referred to in an instrument that was specifically identified. They note that R.C. 5301.49(A) does not include such language and the court should not rewrite the statute to allow additional ways to preserve prior interests not included in the statute by the legislature.

{¶62} The Coffelts further assert that the 1966 Consolidation Deed is valid, even though it lacks a legal description of the Property. They contend that principles of deed construction provide that a deed may refer to another deed for a legal description. They posit that a legal description in a deed has nothing to do with the MTA and its requirements.

{¶63} The Coffelts stress that the purpose behind the MTA is to allow a person to acquire marketable title from a predecessor free and clear of certain prior interests and for the person so acquiring to pass along the same free and clear title to a successor. They maintain that this purpose is accomplished if The Conservation Fund's chain of title is found to extinguish the Holmes Interest because then its reservation of the oil and gas in the 1966 Consolidation Deed was valid. The Coffelts continue that The Conservation Fund's subsequent transfers, including those transfers to the Litigation Parties from 2011-2014, would have marketable title to the oil and gas under the Property, free and clear of the Holmes Interest. The Coffelts conclude that the transfer to James Coffelt from the Conservation Fund that was quieted by the 2014 judgment entry therefore vested in James Coffelt.

{¶64} The Coffelts also conclude that they did not breach a warranty of title to Bounty under the Bounty Deed as Bounty argued in its third-party complaint. They reason that since the MTA automatically extinguished the Holmes Interest in 2009, no warranty breach occurred.

## LAW AND ANALYSIS

{¶65} We affirm the trial court judgment and find that the MTA did not extinguish the Holmes Interest.

{¶66} We must first determine whether the 1966 Consolidation Deed is a proper root of title. Courts should apply contract construction rules to the interpretation of deeds. R.C. 5301.47(E) defines root of title as:

"Root of title" means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. The effective date of the "root of title" is the date on which it is recorded.

{¶67} In *Senterra Ltd. v. Winland*, 2019-Ohio-4387, 148 N.E.3d 34 (7th Dist.) ¶ 52, we held that a "root of title" has two elements. One is a temporal component and the other is a substantive component. We explained:

The temporal element for a "root of title" is a title transaction that is at least 40 years preceding the date when marketability is being determined. Once that title transaction is found, it must be determined whether that title transaction meets the second element. This substantive element requires the title transaction to purport "to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title." R.C. 5301.47(E). A "root of title" cannot be the initial severance deed of the interest the person is seeking to have extinguished. This is because record marketable title extinguishes interests and claims existing prior to the effective date of the root of title, not when the interest and claims were created in the "root of title." R.C. 5301.47(A).

*Id.* at ¶ 53.

{¶68} Applying the temporal requirement to the instant case, the 1966 Consolidation Deed is 40 years prior to the marketability date under either party's version of the applicable date of marketability: the August 5, 2021 filing date of the Holmes Heirs' complaint or the September 24, 2009 date used by the Coffelts when the Conservation Fund recorded the deed conveying the Property to James Coffelt. Thus, the temporal element is met.

{¶69} Turning to the substantive element, the 1966 Consolidation Deed lacks a legal property description. However, it incorporates by reference the property description from the 1950 Hanna Lands Deed. While the parties argue over the comprehensiveness

of incorporating the 1950 Hanna Lands Deed into the 1966 Consolidation Deed, they appear to agree that the 1966 Consolidation Deed was valid because it incorporated by reference the Property description from the 1950 Hanna Lands Deed.

**{¶70}** The parties disagree about whether the trial court properly incorporated by reference the Holmes Interest from the 1950 Hanna Lands Deed into the 1966 Consolidation Deed. The trial court held that under *Blackstone* and *Erickson,* the reference to the Holmes Interest "in the Hanna Lands Deed and incorporated into the Consolidation Deed" was sufficiently specific. (Aug. 30, 2022 J.E. at 19).

**{¶71}** We find this determination correct. Section 1.1 of the 1966 Consolidation Deed is entitled "Conveyance and Reservation." It provides for the granting of the surface and the minerals, "subject, however," to the "exceptions, reservations, conditions * * *interests" stated in Exhibit A, which was attached. Exhibit A specifically states that it is attached to the Deed and forms part of the Deed. It further states that:

> [r]eference is hereby expressly made to each particular instrument described in this Exhibit A, to its record, and to all prior instruments of record described or referred to in each such instruments and their records, for a further description of the properties, interests, or rights covered thereby, including * * *all the terms and conditions of such instruments and the source of title reflected thereby, as fully and to the same extent as though each of such instruments and the descriptions, terms and conditions thereof were fully set forth and described herein.

(1966 Consolidation Deed, Exhibit A).

**{¶72}** Exhibit A provides a list, separated by state or commonwealth, of the instruments of record and includes Ohio and Harrison County. Harrison County is specified in subdivision 5.04 of Exhibit A and the various conveyances and transactions in Harrison County related to the 1966 Consolidation Deed are identified. They are listed by individual Item Number, name of grantor and grantee, the date of the instrument, the volume and page number of the Harrison County record, and the type of instrument. Item 278 in subdivision 5.04 identifies Hanna Lands Company as the grantor, the Pittsburgh

Consolidated Coal Company as the grantee, and lists the date of the instrument, its volume and page number, and the type of instrument.

**{¶73}** The trial court found that the 1950 Hanna Lands Deed contained the exact word-for-word quotation of the Holmes Interest. The court concluded that the answer to the second *Blackstone* query was no, because the reference to the Holmes Interest in the 1966 Consolidation Deed was sufficiently specific. The court therefore held that the Holmes Interest was preserved from extinguishment under the MTA.

**{¶74}** We find that the 1966 Consolidation Deed satisfies the substantive element of the *Blackstone* test. *Blackstone's* first query is met as the Holmes Interest is described within the chain of title through the 1966 Consolidation Deed and attached Exhibit A, which contains the specific information to locate the 1950 Hanna Lands Deed. The second query is whether the reference to the Holmes Interest is more than a general reference. *Blackstone* set forth the definitions to distinguish general and specific references:

> "General" is defined as "marked by broad overall character without being limited, modified, or checked by narrow precise considerations: concerned with main elements, major matters rather than limited details, or universals rather than particulars: approximate rather than strictly accurate." *Webster's Third New International Dictionary* 944 (2002).
>
> * * *
>
> "Specific" is defined as "characterized by precise formulation or accurate restriction (as in stating, describing, defining, reserving): free from such ambiguity as results from careless lack of precision or from omission of pertinent matter." *Webster's Third New International Dictionary* at 2187.

155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, ¶ 13-14.

**{¶75}** The references to the 1950 Hanna Lands Deed contained in the 1966 Consolidation Deed are more specific than general. The Exhibit A contains the volume and page number reference of the 1950 Hanna Lands Deed, even though it is not

necessary. The grantor and grantee names are also identified and the date of the instrument.

**{¶76}** The legislative purpose behind the MTA is not frustrated by the incorporation of the 1950 Hanna Lands Deed preservation of the Holmes Interest into the 1966 Consolidation Deed. The latter Deed is available in the chain of title and it specifically refers to the exceptions and reservations that it is subject to, which includes the Holmes Interest in the 1950 Hanna Lands Deed. A title searcher can find the 1950 Hanna Lands Deed and the Holmes Interest through the specific information provided in the 1966 Consolidation Deed. Thus, the trial court did not err by applying the incorporation by reference doctrine to the MTA in this case.

**{¶77}** Accordingly, we find Coffelts' sole assignment of error lacks merit and we affirm the trial court's judgment.

Waite, J., concurs.

Robb, P.J., concurs.

[Cite as *Wolfe v. Bounty Minerals, L.L.C.*, 2024-Ohio-2460.]

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Harrison County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**