[Cite as *O'Kelley v. Rothenbuhler*, 2021-Ohio-1167.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

DR. ROBERT LEON O'KELLEY, JR.,

Plaintiff-Appellant,

v.

RONALD ROTHENBUHLER ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 MO 0009**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. CVH2019-263

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. David Wigham,* and *Atty. Emily Anglewicz,* Roetzel & Andress, LPA, 222 South Main Street, Suite 400, Akron, Ohio 44308, and *Atty. Sara Fanning*, Roetzel & Anress, 41 South High Street, Huntington Center, 21st Floor, Columbus, Ohio 43215, for Plaintiff-Appellant and

*Atty. Donald Tennant, Jr.,* Tennant Law Offices, 38 Fifteenth Street, Suite 100, Wheeling, West Virginia 26003, for Defendants-Appellees Ronald and Jennifer Rothenbuhler. *Atty. Todd Kidlow*, and *Atty. Heidi Kemp*, Emens Wolper Jacobs & Jasin Law Firm, 250 West Main Street, Suite A, St. Clairsville, Ohio 43950, for Defendants-Appellees Sharon Rothenbuhler et al. *Atty Steven Silverman*, Babst, Calland, Clements & Zomnir, PC, Two Gateway Center, 6th Floor, Pittsburgh, PA 15222, for Defendant-Appellee Eclipse Resources I, LP. *Atty. Ryan Regel*, Yoss Law Office, 122 North Main Street, Woodsfield, Ohio 43793, for Defendants-Appellees Constance and Randy Smith.

Dated:  March 31, 2021

---

**D'APOLITO, J.**

{¶1}    Plaintiff-Appellant, Dr. Robert Leon O'Kelley, Jr. (purported mineral interest owner) appeals the entry of summary judgment by the Monroe County Court of Common Pleas in favor of Defendants-Appellees, Ronald Rothenbuhler, Jennifer Rothenbuhler, Sharon Rothenbuhler, Kevin Rothenbuhler, Kenneth Rothenbuhler, Kristy Rothenbuhler Lumbatis, Jason Lumbatis, Rothenbuhler Oil and Gas, LLC, Constance Smith, Randy Smith (collectively "Rothenbuhler Appellees") (surface owners/oil and gas lessors), and Eclipse Resources I, LP ("Eclipse")(oil and gas lessee)  and the corresponding denial of Appellant's cross motion for summary judgment on Appellees' counterclaim based on the Marketable Title Act, R.C. 5301.47 et seq., ("MTA").

{¶2}    Appellant's complaint is predicated upon a preservation notice filed pursuant to the Dormant Mineral Act, R.C. 5301.56(C)(1) ("DMA").  Appellees' counterclaims assert that the mineral interest was extinguished by operation of the MTA prior to the filing of the preservation notice. The parties agreed to stay the resolution of Appellant's DMA claim, and file cross motions for summary judgment exclusively on Appellees' counterclaim, in recognition that the preservation notice would be ineffectual if the MTA had extinguished Appellant's purported mineral interest prior to the filing of the notice.

{¶3}    Because the root of title deed and the only title transaction occurring in the forty years following the root, in both the surface and mineral interest chains of title, contain only a general reference to the severed mineral interest, the judgment entry of

the trial court finding that Appellant's interest in the minerals was extinguished by operation of the MTA is affirmed.

{¶4} Appellant argues in the alternative, and for the first time on appeal, that the Rothenbuhler deed is not a proper root of title because it does not convey a fee simple absolute, seeking to resurrect our decisions in *Christman v. Wells*, 7th Dist. Monroe No. 539, 1981 WL 4773 (Aug. 28, 1981) and *Holdren v. Mann*, 7th Dist. Monroe No. 592, 1985 WL 10385 (Feb. 13, 1985). In *Senterra Ltd. v. Winland*, 7th Dist. Belmont No. 18 BE 0051, 2019-Ohio-4387, 148 N.E.3d 34, modified on reconsideration, 7th Dist. Belmont No. 18 BE 00512019-Ohio-5458, appeal allowed, 158 Ohio St.3d 1522, 2020-Ohio-3018, 145 N.E.3d 311, we opined that *Christman* and *Holdren* were no longer good law based on the root of title in *Blackstone v. Moore*, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, which contained a specific reference to a prior reservation. However, issues that are not raised before the trial court cannot be raised for the first time on appeal and are waived. *Vari v. Coppola*, 7th Dist. Mahoning No. 18 MA 0114, 2019-Ohio-3475, ¶ 12, appeal not allowed, 157 Ohio St.3d 1523, 2019-Ohio-5327, 137 N.E.3d 106, ¶ 12 (2019). Accordingly, we decline to address this argument.

## FACTS AND PROCEDURAL HISTORY

{¶5} Appellant filed his complaint to quiet title and for trespass, conversion, and disgorgement of royalties on August 9, 2019 relating to the mineral interests underlying two parcels situated in Adams Township, Monroe County: a portion of a roughly 182-acre parcel owned by the Rothenbuhler Appellees, and a roughly 15-acre parcel owned by Defendants, Gene and Darlene Rothenbuhler. Ownership of the mineral interest underlying the second parcel was resolved by a stipulated judgment entry and, as a consequence, only the mineral interest underlying the first parcel is at issue in this appeal. (See 12/10/2019 J.E.)

{¶6} Eclipse filed its answer and counterclaim based on the MTA on September 25, 2019. On September 27, 2019, the Smiths filed their answer and counterclaim based on the MTA. Ronald and Jennifer Rothenbuhler filed their answer and counterclaim based on the MTA on September 30, 2019. That same day, Sharon Rothenbuhler, Kevin Rothenbuhler, Kenneth Rothenbuhler, Kristy Rothenbuhler Lumbatis, Jason Lumbatis,

and Rothenbuhler Oil and Gas, LLC, filed their answer and counterclaim based on the MTA, as well as a motion to dismiss, or, in the alternative, motion for summary judgment. Appellant filed timely answers to the respective counterclaims. On October 11, 2019, Appellant filed an opposition brief to the motion to dismiss/for summary judgment. A reply brief was filed on October 18, 2019.

{¶7}   On February 5, 2020, the parties filed a joint motion to stay discovery on the claims asserted in the complaint and to file cross-motions for summary judgment solely on the MTA counterclaims. On April 13, 2020, after the matter was fully briefed by all parties, the trial court entered summary judgment in favor of Appellees, finding that the MTA applied to mineral interests, and that the mineral interest in this case was extinguished by operation of the MTA in June of 2009.

## THE SEVERANCE DEED

{¶8}   The following facts are taken from the Kristy Rothenbuhler affidavits and the documents attached to the summary judgment briefs. In 1893, William L. Morris and Lorena M. Morris conveyed a 160-acre parcel of property in Monroe County by warranty deed to Mary A. Zonker, but excepted and reserved the following mineral interest in 155 acres of the property:

> All oil, gas and minerals (including coal) of whatsoever kinds with full right to develop same and to operate on said premises therefore with the incidental rights and privileges necessary to such development and operation including among other things the right to locate and drill thereon and therein oil wells and gas wells to lay pipes to and from said wells * * *

{¶9}   On April 21, 1906, Mary A. Zonker conveyed a 14.219-acre tract from the 160-acre property to Joseph C. Rothenbuhler, predecessor-in-interest to Defendants, Gene and Darlene Rothenbuhler. The 14.219-acre tract is the second parcel at issue in the complaint.

{¶10}  In a stipulated judgment entry, filed on December 10, 2019, final judgment was entered regarding the ownership of the mineral interest in the 14.219-acre tract in

favor of Appellant. Therefore, only the mineral interest in the remaining approximately 140-acre portion of the property is at issue in this appeal.

## THE MINERAL INTEREST CHAIN

{¶11}  William L. Morris died testate in March of 1939. In 1943, Harold W. Morris, William Glenn Morris, Robert L. Morris, Ann McLean, and Adelaide Humphries, as heirs of William L Morris, conveyed the mineral interest to Lorena A. Morris. That same year, Lorena A. Morris conveyed the mineral interest by quit claim deed to William Lee Humphries. No estate has been filed or administered in the Monroe County Probate Court for Humphries through the date of the filing of the complaint.  (2/28/20 Kristy Rothenbuhler Aff., ¶ 8.)

{¶12}  Humphries was married to Appellant's sister, Sara O'Kelley Humphries. (Appellant Aff., ¶ 3.)  Appellant is Sara's only sibling. (*Id.*, ¶ 4.)  Sara and Humphries did not have any children, and, when Humphries died in 1981, he was survived by Sara. (*Id.*, ¶ 5-6.)  After Humphries' death, Sara never remarried and never had any children. Sara died (presumably intestate) on January 8, 2015, survived by Appellant. (*Id.*, ¶ 7-9.)  Thus, upon Sara's death, Appellant inherited the mineral interest.  According to the February 2020 Kristy Rothenbuhler affidavit, she conducted a title search on or about May 1, 2013, and "there was no document on record in Monroe County conveying the Morris Interest or anything else to [Sara or Appellant]". (Rothenbuhler Aff., ¶ 6, 15.)

## THE SURFACE CHAIN

{¶13}  Appellees claim their interest in the minerals as successors of Mary A. Zonker. The entire post-severance pre-root history of the surface title is attached to Appellees' cross motion for summary judgment.

{¶14}  Through a series of conveyances, Mary A. Zonker's interest in the surface became vested in Raymond E. and Helen L. Dennis. By deed dated June 9, 1969, Raymond E. and Helen L. Dennis conveyed the surface to Lloyd Rothenbuhler ("Rothenbuhler Deed"). The Rothenbuhler Deed was filed of record in Monroe County on June 16, 1969.

{¶15} The Rothenbuhler Deed contains the following reference to a prior oil and gas reservation:

Being the south east quarter of Section Nineteen (19), Township four (4) and of Range four (4) containing 160 acres more or less. Except 20 acres thereof conveyed by Mary B. [sic] Zonker to Joseph C. Rothenbuhler and also excepting the oil and gas minerals including coal underlying the same heretofore conveyed.

{¶16} Based on the filing date of the complaint (August 9, 2019), the most recent transfer of the mineral interest or surface on or before August 9, 1979 (forty years prior to the filing of the complaint) is the starting point for this Court's analysis. Therefore, the trial court correctly concluded that the Rothenbuhler Deed is the root of title, as that term is defined by the MTA.

{¶17} During the forty years following the Rothenbuhler Deed, one transfer of the parcel appears in the county records. A certificate of transfer was recorded on January 13, 1993, transferring the property from the Estate of Lloyd Rothenbuhler to Ronald and Donald Rothenbuhler and Constance Smith.

{¶18} The property is described as "Parcel Six: Entire interest in 181.88-acre parcel of real property situated in Adams Township, Monroe County, Ohio, (Auditor's description is R 4, T 4, S 19 pt se ne), the legal description is set forth in as Parcel Six in the attached Schedule of Real Estate." The description reads, in its entirety:

<u>Parcel Six</u>

Situated in Adams Township, Monroe County, Ohio, and bounded and described as follows: Being the south east quarter of Section Nineteen (19), Township four (4), and of Range four (4) containing 160 acres more or less, except 20 acres thereof conveyed by Mary B. Zonker to Joseph C. Rothenbuhler, and also excepting the oil and gas minerals including coal underlying the same heretofore conveyed. Also excepting all easements and right-of-ways of record.

Prior deed reference: Deed from Raymond E. and Helen L. Dennis dated June 9, 1969, which was filed for record on June 16, 1969, and recorded in Deed Vol. 155, page 45.

## STANDARD OF REVIEW

{¶19} This appeal is from a trial court judgment resolving a motion for summary judgment. An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶20} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Doe v. Skaggs*, 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, ¶ 11.

{¶21} The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

## ANALYSIS

## ASSIGNMENT OF ERROR NO. 1

**THE DMA, BEING THE SPECIFIC STATUTE GOVERNING THE ABANDONMENT OF OIL AND GAS RIGHTS, SUPERSEDES AND CONTROLS OVER THE MTA, THE GENERAL STATUTE GOVERNING THE EXTINGUISHMENT OF ALL INTERESTS IN LAND, BECAUSE THE TWO STATUTES IRRECONCILABLY CONFLICT.**

**{¶22}** On December 2, 2020, the Ohio Supreme Court issued its opinion in *West v. Bode*, -- Ohio St.3d --, 2020-Ohio-5473. In a 4-3 decision, the majority held that no irreconcilable conflict exists between the DMA and the MTA, and, as a consequence, the MTA applies to mineral interests. Appellant conceded at oral argument that the Ohio Supreme Court's decision in *West* governs this matter, and, therefore, Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**THE MINERAL INTEREST WAS NOT EXTINGUISHED UNDER THE MTA.**

**{¶23}** The General Assembly enacted the MTA in 1961 "to extinguish interests and claims in land that existed prior to the root of title, with 'the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title.'" *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 17, quoting R.C. 5301.55. The MTA provides that a person who has an unbroken chain of title of record to any interest in land for at least 40 years has a "marketable record title" to the interest. R.C. 5301.48. Except as stated in R.C. 5301.49, a marketable record title "operates to extinguish" all interests and claims that existed prior to the effective date of the root of title, R.C. 5301.47(A), and those preexisting interests are "declared to be null and void," R.C. 5301.50. The MTA extinguishes property interests by operation of law after 40 years from the effective date of the root of title unless

a saving event has occurred. *Corban* at ¶ 18. An interest that has been extinguished by operation of the MTA cannot be revived. See R.C. 5301.49(D).

**{¶24}** R.C. 5301.49 sets out circumstances in which a marketable record title will remain subject to interests that existed prior to the root of title. Those exceptions "'serve as a shield to protect'" the excepted interests from extinguishment. *Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 335, 467 N.E.2d 537 (1984), quoting *Heath v. Turner*, 309 N.C. 483, 493, 308 S.E.2d 244 (1983). As previously stated, the Ohio Supreme Court has referred to the exceptions as "saving event[s]." *Corban* at ¶ 18.

**{¶25}** In part, R.C. 5301.49 provides that a marketable record title remains subject to an interest that predates the effective date of the root of title when: (1) the preexisting interest is specifically identified in the muniments that form the record chain of title, (2) the holder of the preexisting interest has recorded a notice claiming the interest, in accordance with R.C. 5301.51, or (3) the preexisting interest arises out of a title transaction that was recorded subsequent to the effective date of the root of title. R.C. 5301.49(A), (B), and (D). *West*, supra, ¶ 16.

**{¶26}** Where an interest is inherent in the muniments of the chain of title, the MTA operates to extinguish the interest if it is not specifically identified. In this appeal, Appellant contends that the reference "and also excepting the oil and gas minerals including coal underlying the same heretofore conveyed" in both the root of title and certificate of transfer constitutes a specific reference. R.C. 5301.49 reads in pertinent part:

Such record marketable title shall be subject to:

(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest
* * *

**{¶27}** The three-step inquiry announced by the Ohio Supreme Court in *Blackstone, supra*, is derived from R.C. 5301.49(A). In *Blackstone*, the root of title was a 1969 deed conveying the real property from Carpenter to Blackstone. The Blackstone deed read, in pertinent part: [e]xcepting the one-half interest in oil and gas royalty previously excepted by Nick Kuhn, their [sic] heirs and assigns in the above described sixty acres. *Id.* at ¶ 3.

**{¶28}** In order to determine whether the MTA extinguished the prior interest, the *Blackstone* Court fashioned a three-step inquiry: (1) Is there an interest described within the chain of title? (2) If so, is the reference to that interest a "general reference"? (3) If the answers to the first two questions are "yes," does the general reference contain a specific identification of a recorded title transaction? *Id.* at ¶ 12.

**{¶29}** The Ohio Supreme Court found that the Kuhn reference was not a general reference, but, instead, a specific reference, and determined at step two of the inquiry that the mineral interest was not extinguished by the MTA. The Ohio Supreme Court opined, "[b]ecause the reference to the Kuhn heirs was not a general reference, there is no need to proceed to the third question—that is, whether a general reference contains a specific identification of a recorded title transaction." *Id.* at ¶ 15.

**{¶30}** The root of title and the subsequent certificate of transfer of the property at issue in this appeal contain the following reference, "excepting the oil and gas minerals including coal underlying the same heretofore conveyed." In his summary judgment briefs, Appellant argued that the clause "heretofore conveyed" modified the phrase "the oil and gas minerals including coal." However, on appeal, Appellant argues that the clause "heretofore conveyed" modifies "the same," that is, the clause refers to the surface rights that are being conveyed in the deed. In other words, on appeal, Appellant argues that the exception is a mere repetition, which contains no reference back to a prior deed.

**{¶31}** The parties do not dispute that the mineral interest at issue in this case is described within the chain of title. The dispute arises with respect to the second *Blackstone* inquiry, that is, whether the reference is a "general reference." *Id.* at ¶ 12. Appellant concedes that there is no specific identification of a recorded transaction in the root of title or subsequent certificate of transfer, and, as a result, this appeal turns on the general vs. specific step-two determination from *Blackstone*.

Case No. 20 MO 009

**{¶32}** The *Blackstone* Court provided the following distinction between general and specific references:

> Because the term "general reference" is not defined in the act, we look to the ordinary meaning of the term. *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 26. "General" is defined as "marked by broad overall character without being limited, modified, or checked by narrow precise considerations: concerned with main elements, major matters rather than limited details, or universals rather than particulars: approximate rather than strictly accurate." Webster's Third New International Dictionary 944 (2002).
>
> Our caselaw distinguishes between a general reference and a specific reference: if a reference is specific, it is not a general reference. See *Toth* [*v. Berks Title Ins. Co.*,] 6 Ohio St.3d at 341, 453 N.E.2d 639 [1983]. "Specific" is defined as "characterized by precise formulation or accurate restriction (as in stating, describing, defining, reserving): free from such ambiguity as results from careless lack of precision or from omission of pertinent matter." Webster's Third New International Dictionary at 2187.

*Id.* at ¶ 13-14.

**{¶33}** The Blackstones argued that a reference is general unless it includes the volume and page number of the conveyance index, or, in the alternative, the names of the grantor, grantee, and the date of the severance deed.  They reasoned that the very purpose of the MTA was to permit surface owners to establish record marketable title based on a limited 40-year title search.

**{¶34}** However, the Ohio Supreme Court found no textual support in the MTA for a volume and page number requirement, and, further, "declined to view the [MTA's] purpose as solely to limit the length of time required for title searches." *Id.* citing *Heifner v. Bradford,* 4 Ohio St.3d 49, 53, 446 N.E.2d 440 (1983).  The Ohio Supreme Court observed:

The reference to the Kuhn royalty interest includes details and particulars about the interest in question. And the interest is accurately described. Moreover, the reference is "free from * * * ambiguity." *Id.* The exception that is noted in the 1969 deed includes information about the type of interest created – "one-half interest in oil and gas royalty" and specifies by whom the interest was originally reserved – "Nick Kuhn, their [sic] heirs and assigns." There is no question which interest is referenced in the 1969 deed. Thus, it is a specific reference.

*Id.* at ¶ 15. Accordingly, the *Blackstone* Court held that "a reference that includes the type of interest created and to whom the interest was granted is sufficiently specific [at step two of the inquiry] to preserve the interest in the record title." *Blackstone, supra*, ¶ 18.

{¶35} Appellant argues that the *Blackstone* Court did not specifically require that the name of the reserving party be included in the reference in order to find that the reference is specific. Appellant cites *Toth v. Berks Title Ins. Co.,* 6 Ohio St.3d 338, 452 N.E.2d 639 (1983) for the proposition that a *Blackstone* step-two reference need not contain the reserving party's name, but instead, need only repeat the reservation verbatim in order to be specific.

{¶36} Toth sought damages pursuant to a title guaranty issued by the Berks defendants in 1974, because the title guaranty did not disclose a setback use restriction originating in a 1924 deed. The Berks defendants argued that disclosure of the setback use restriction was unnecessary because it had been extinguished by the MTA.

{¶37} The *Toth* majority provided the following analysis:

In the present case the root of title of plaintiff, Edward Toth, is a 1928 deed transferring title in the property herein involved from Henry H. Camp to Anna M. Camp. The setback use restrictions were set forth in a 1924 deed which had transferred the interest in the property to Henry H. Camp. Following Henry H. Camp's transfer of the property in 1928 to Anna M. Camp, the "root of title" transaction, no recorded act transpired which affected the

Akron property until June 17, 1966, when the estate of Anna M. Camp transferred title in the property to Meyer Myers, Louis S. Myers and Isidore C. Myers. It was the Myerses who transferred the title in the Akron property to plaintiff on October 18, 1974.

* * *

The 1928 deed had no mention of the setback use restrictions. The 1966 deed did contain a specific note which specifically referred to the setback use restrictions which are the center of this controversy. The defendants-appellees, Berks Title Insurance Company and Berks Akron Title Agency, Inc., assert that the reference in the 1966 deed is not sufficient because it is general and it points to a 1926 land plat as the source of the restriction. It is defendants-appellees' contention that the 1926 plat cannot be part of the muniments of plaintiff's record title because it is not a title transaction as defined in R.C. 5301.47(F).

The 1966 deed is a muniment within the record marketable title of the property now owned by the plaintiff. The 1966 deed specifically refers to the very use restrictions which are the subject matter of the controversy involved herein. R.C. 5301.49(A) states: "Such record marketable title shall be subject to: * * * [a]ll interests and defects which are inherent in the muniments of which such chain of record title is formed * * *." The court need not look further than this first clause of R.C. 5301.49(A) for the settlement of the within controversy. * * * The reference in the 1966 deed to the setback use restrictions was specific, not general, and as such, it is an interest or defect which is "inherent in the muniments." Any interest or defect which is referred to specifically in a muniment within the marketable record title of a parcel of property, as defined by R.C. 5301.48, is not extinguished by the Ohio Marketable Title Act.

*Id.* at 340.

Case No. 20 MO 009

**{¶38}** The 1966 deed reads, in relevant part:

> [S]ubject to all legal highways, and are subject to restrictions on the Plat of Fairlawn Heights Allotment, Part 'B' Section 'D' and recorded in Plat Book 34, pages 75-77of Summit County Records.

> NOTE:  The above plat shows a building line of 100 feet parallel and with the westerly line of Beck Road a building line of 60 feet parallel and with the northerly line of West Market Street for caption.

*Toth v. Berks Title Ins. Co*, 9th Dist. Summit No. 10488, 1982 WL 2693, *1-2; *Toth*, *supra*, fn. 8.

**{¶39}** The dissent in *Toth* asserts that "the majority approach would subject marketable record titles to interests predating the root of title upon *a mere recitation of the interest in a muniment of record after the root of title*."  (Emphasis added) *Id.* at 343. The dissent cautioned that the majority opinion subjected the property to the use restrictions set forth in the 1966 conveyance despite the fact that it was not necessary to analyze the 1924 deed creating the restrictions.  The dissent further observed that, without examination to the creating document, the accuracy of the description of the interest is dependent solely on the muniment in which the reference is made. *Id.*

**{¶40}** On March 16, 2021, the Ohio Supreme Court further explained the *Blackstone* step-two "general vs. specific" distinction in *Erickson v. Morrison*, -- Ohio St.3d --, -- N.E.2d --, 2021-Ohio-746.  In that case, the root of title deed and all of the recorded transfers thereafter contained a verbatim restatement (with the exception of the word "said") of the original severance language, which read, "Excepting and reserving therefrom all coal, gas, and oil with the right of said first parties, their heirs and assigns, at any time to drive and operate for oil and gas and to mine for coal."  *Id.* at ¶ 5.  The surface owners argued that the reference was general because it did not identify the reserving party, based on the Ohio Supreme Court's holding in *Blackstone*.

**{¶41}** However, the *Erickson* Court opined that *Blackstone* "did not hold that a reference is *required* to identify both the type of interest and by whom it is reserved to preserve the interest."  (Emphasis in original) *Id.* at ¶ 24.  The *Erickson* Court cited the

1988 amendment of the MTA, which required greater specificity in order for recorded notices to preserve preexisting interests, to demonstrate that the identity of the reserving party was not required in order for the reference in the muniments of title to be specific:

> [W]hen the General Assembly amended the requirements for recording a notice of preservation to include the name of the interest's owner, a description of the property affected, and the recording information creating a property interest affected by the notice, it did not also amend R.C. 5301.49(A) to require that a reference in the muniments of title contain that same information in order to preserve a preexisting interest from being extinguished after 40 years from the root of title.

*Id.* at ¶ 29.

{¶42} In defining the characteristics of a "general" reference, the Ohio Supreme Court further observed that "R.C. 5301.49(A) is directed at " 'the common conveyance practice for draftsmen to include in the deed description some such language as "subject to easements and use restrictions of record." ' " *Id.* at ¶ 30, quoting Smith, *The New Marketable Title Act*, 22 Ohio St.L.J. 712, 717 (1961). The *Erickson* Court continued:

> Dean Allan F. Smith explained that "[t]his is a device which is probably adequate to protect the grantor from liability on his covenants for title in a warranty deed should there be burdens of that type on record. This throws the risk of title search on the purchaser." *Id.* But such a general reference leaves it unclear whether a prior interest in fact exists. And as Dean Smith stated, "The Ohio Act * * * wisely adopted the provision in the Model Act which makes such a general reference inadequate to preserve the ancient interests even though the general reference appears in the muniments of title which make up the forty-year chain." *Id.*

*Erickson, supra*, ¶ 30.

{¶43} Because the surface owners' root of title and subsequent conveyances "[were] made subject to a specific, identifiable reservation of mineral rights recited

throughout their chain of title using the same language as the recorded title transaction that created it," the *Erickson* Court held that the reference was specific not general. In so holding, the Ohio Supreme Court observed that the reference in *Erickson* did not contain "vague, boilerplate language excepting any reservations that may – or may not – exist," but, instead, "a reference to a specific, identifiable reservation of mineral rights that can be determined through a reasonable title search." *Id.* at ¶ 3, 32.

**{¶44}** Although the Ohio Supreme Court's recent decision in *Erickson* serves to further clarify the *Blackstone* step-two "general vs. specific" distinction, we find nonetheless that the reference at issue in the above-captioned case – "excepting the oil and gas minerals including coal underlying the same heretofore conveyed" – is general not specific. Simply stated, the reference lacks any "narrow precise considerations," "limited details," or "particulars" as described in *Blackstone.*

**{¶45}** First, the reference is not a verbatim restatement of the original severance language. The original severance deed excepts and reserves "*[a]ll* oil, gas and minerals (including coal) of whatsoever kinds." (Emphasis added.) The phrase in the reference at issue in this appeal – "the oil and gas minerals including coal" – could refer to a prior deed that severed all of the oil, gas, and coal, or a prior deed that severed less than all of the oil, gas, and coal. Therefore, we find that the description of the interest lacks specificity.

**{¶46}** Next, the original severance language excepts and reserves to the grantor the "full right to develop same and to operate on said premises therefore with the incidental rights and privileges necessary to such development and operation including among other things the right to locate and drill thereon and therein oil wells and gas wells to lay pipes to and from said wells." The reference at issue here omits the foregoing language from the severance deed, which serves to describe in detail the rights of the reserving party with respect to the mineral interest.

**{¶47}** Further, the parties dispute on appeal whether the clause "heretofore conveyed" modifies the phrase "the oil and gas minerals including coal" or "the same." We need not resolve the dispute over the language in the deed, because the mere fact that the reference is susceptible to more than one interpretation is further evidence that the reference is general not specific.

**{¶48}** Even assuming the "heretofore conveyed" modifies "oil and gas minerals

including coal," we find that the reference sounds to the reader like vague, boilerplate language excepting reservations that may or may not exist, rather than a specific, identifiable reservation of mineral rights using the same language that created it. Based on the ambiguity of the reference, we find that it is general not specific. As a consequence, we answer the second *Blackstone* inquiry in the affirmative, and find that Appellant's second assignment of error is meritless.

## CONCLUSION

**{¶49}** In summary, we find that the MTA applies to mineral interests, and the root of title deed and the only title transaction occurring in the forty years following the root, in both the surface and mineral interest chains of title, contain only a general reference to the severed mineral interest. Therefore, the judgment entry of the trial court finding that Appellant's interest in the minerals was extinguished by operation of the MTA is affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.

Case No. 20 MO 009

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**