[Cite as *Chartier v. Rice Drilling D., L.L.C.*, 2023-Ohio-272.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

JOHN A. CHARTIER ET AL.,

Plaintiffs-Appellees,

v.

RICE DRILLING D LLC ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 BE 0046**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 19 CV 340

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Todd M. Kildow, Atty. Heidi R. Kemp,* Emens, Wolper, Jacobs & Jasin Law Firm, 250 West Main Street, Suite A, St. Clairsville, Ohio 43950, for Plaintiffs-Appellees and

*Atty. David K. Schaffner,* Schaffner Law Offices, Co., LPA, 132 Fair Avenue NW, New Philadelphia, Ohio 44663, for Defendants-Appellants.

Dated:
January 23, 2023

**Donofrio, J.**

**{¶1}** Defendants-Appellants are David L. Cook, Virginia Cook, Hubert L. Cook, Tony L. Hutchinson, Lisa Adamik, and David Cook (heirs of Barbara Cook, now deceased), Estate of Rico A. Caruso, Michael Caruso, Karen L. Stryker, Alan Lindsley, Mark Lindsley, Charles Battista, Cindy Eggert (Trustee of Tracy N. Hupp and Iva Lou Hupp Revocable Trust), Carol Fitz, Charles Kevin Grimm, Raymond Grimm, Travis Xavier Grimm, Regina Grimm now known as (nka) Regina Denoni, Marilyn Murphy, Toni Fugate, Margaret Grimm Rohner, Patricia Taylor Cook, Yvonne M. Rinehart, Matthew L. Lee, Jeannie Marie Lee, Tracy N. Hupp, Charles William Milligan, Shirley Taylor, Karen Cook, Charles Grimm, and Verna Grimm (appellants). Appellants are heirs or potential heirs of Anna Carpenter, Bessie Cook, and/or Charles R. Grimm.

**{¶2}** Appellants appeal an October 14, 2021 Belmont County Common Pleas Court judgment and November 10, 2021 findings of fact and conclusions of law granting summary judgment to plaintiffs-appellees, John A. Chartier and Jennifer A. Chartier, (appellees) on three of their claims. Those claims were: Count 1 under the Dormant Minerals Act (DMA); Count 5 under the Declaratory Judgment Act (DJA); and Count 8 under the Marketable Title Act (MTA). The court quieted title to appellees of 100% of the oil and gas rights underlying 135.771 acres of property in Belmont County.

**{¶3}** The parties agree that on August 17, 1940, Anna Carpenter executed deeds conveying 135.771 acres of land in Wayne Township, Belmont County (Property) and oil and gas interests underlying the Property. She conveyed a "one-half interest in the oil, gas and royalties underlying the Property" to her son, Charles R. Grimm, in a warranty deed filed on February 5, 1944 and recorded on February 9, 1944 (Grimm Deed). On the same date, Anna Carpenter executed a warranty deed to the "premises" to her daughter, Bessie Cook, and Bessie's heirs (Cook Deed). The Cook Deed identified eight tracts of land, but stated: "ALSO EXCEPTING AND RESERVING to the GRANTOR, herein, her heirs and assigns, one-half of all oil, gas, and royalties under the premises described herein." The Cook Deed was filed for record on February 10, 1944 and recorded on February 11, 1944.

**{¶4}** On May 15, 1943, Bessie Cook and Charles R. Grimm, and their respective spouses, Wylie Cook and Verna Grimm, entered into an oil and gas lease with Tri-State Oil & Gas Company. Anna Carpenter was not a party to this lease, but the lease identified the oil and gas under the Property. It was recorded on March 4, 1944.

**{¶5}** Anna Carpenter died intestate on February 16, 1946.

**{¶6}** On March 31, 1948, Bessie and Wylie Cook executed a warranty deed conveying all of their interest in the Property to Dale Doak and William Doak. This deed was recorded on April 9, 1948. (Doak Deed). It contained no exceptions or reservations.

**{¶7}** On February 25, 1950, Bessie and Wylie Cook executed a second warranty deed to Dale Doak and William Doak, "to correct a deed made March 31, 1948." (Doak II Deed). This deed added the following:

> Excepting and reserving all the Pittsburgh #8 vein of coal and ½ of all oil and gas royalties under said lands together with mining rights and reservations made in the deed conveying said lands from Annie E. Carpenter to Bessie Cook.

**{¶8}** On June 29, 1951, William Doak and his wife, Juanita, executed a quitclaim deed to Dale Doak for all of the Property conveyed to William and Dale in the Doak II Deed (Dale Deed). The Dale Deed contained the same exception and reservation language as the Doak II Deed.

**{¶9}** On October 14, 1976, Dale Doak conveyed the Property by warranty deed to Mark and Diana Whaley (Whaley Deed). The Whaley Deed contained the same one-half oil and gas royalties exception language as the Dale Deed and Doak II Deed[1].

---

[1] It is noted that we made factual findings relevant to the instant case in *Whaley v. Schaffner Law Offices, L.P.A.*, 7th Dist. Belmont No.14 BE 0056, 2017-Ohio-7698. There, we found:

> In a deed dated August 17, 1940 and filed February 5, 1944, conveying the Property [8.8738 acres of land in Belmont County] as part of a larger tract of land, grantor Anna Carpenter conveyed a one-half interest in the oil and gas underlying the property in tracts one through six to Charles Grimm. Carpenter reserved all of the oil and gas underlying tract eight.

> Carpenter conveyed the surface to Bessie Cook by deed recorded February 10, 1944, reserving a one-half interest in the oil and gas underlying tract one through six to Charles Grimm. Carpenter again reserved all of the oil and gas underlying tract eight.

Case No. 21 BE 0046

{¶10}  On May 23, 2002, Mark and Diana Whaley executed a general warranty deed to appellees. The deed identified the Property and stated that it was "[s]ubject to all legal roads, right of ways, easements, leases, restrictions, reservations, exceptions or other encumbrances that may be found in a title search." (Chartier Deed).

{¶11}  On February 29, 2012, appellees published a Notice of Abandonment Pursuant to the DMA with the Times Leader, a Belmont County newspaper. The Notice was published pursuant to R.C. 5301.56 and it specifically noticed Charles R. Grimm, Verna Grimm, Anna E. Carpenter, and their unknown heirs, assigns, devisees, executors, administrators, and next of kin.

{¶12}  On April 30, 2012, appellees filed a Notice of Abandonment and Affidavit Vesting Mineral Interest in Surface Owner under R.C. 5301.56(H) in the Belmont County Recorder's Office. The Affidavit stated that Anna had conveyed one-half interest to the oil and gas under the Property to Charles R. Grimm in the Grimm Deed, and conveyed the Property to Bessie in the Cook Deed, but reserved one-half interest in the oil and gas.

{¶13}  The affidavit further stated that the Notice of Abandonment was served by publication on all interested parties, 60 days had passed since the publication, and no owners of the oil and gas interest under the Property had come forward with a claim to preserve the interest. Appellees' counsel attested that those with rights to claim interests did not file claims to preserve those interests in the 40 years subsequent to the filing of the severance deeds. Appellees further stated that notice was provided that the mineral interest was deemed abandoned and vested in them. They requested that the Belmont County Recorder make a notation in the deed records that the mineral interest was abandoned pursuant to the Affidavit of Abandonment. The Belmont County Recorder made the notation.

{¶14}  On November 10, 2012, appellees entered into a lease agreement with Rice D Drilling, LLC. (Rice) for the oil and gas under the Property. The agreement provided that Rice would conduct due diligence in determining defensible title to the oil and gas interests. Appellees were paid in full for a 100% ownership of the mineral interest under that contract, plus a signing bonus.

{¶15}  On July 8, 2013, Bessie and Wylie Cook, through Attorney Schaffner, filed an "Affidavit Notice of Claim to Preserve Mineral Interest in Land (ORC 5301.49 et seq.)."

Attorney Schaffner stated in the affidavit that he represented Patricia Cook Taylor, David L. Cook, Hubert Cook, Bruce A. Cook, Barbara Cook, Rico A. Caruso, Michael Caruso, Karen L. Stryker, Robert Edwin Milligan, and Tony L. Hutchinson, who were grandchildren and heirs at law to Bessie and Wylie Cook, and great grandchildren to Anna Carpenter. He attested that he had knowledge of the facts in the affidavit and he was competent to testify about them. He stated that the heirs had no intent to abandon the mineral interests in the Property and they were giving notice that they wished to preserve all rights and title to the interests.

{¶16} Contained in the lease between appellees and Rice was an option to extend the primary contract term by five years if Rice provided notice to appellees and an extension bonus payment. Rice provided the notice and credited appellees with only 50% of the mineral interest, claiming that appellees did not own the entire interest.

{¶17} On September 13, 2019, appellees filed a complaint against appellants to quiet title to the oil and gas interests. They filed a second amended complaint on June 8, 2020, alleging in Count 1 that under the DMA, they provided Notice of Abandonment by publication on February 29, 2012 to "Charles R. Grimm, Verna Grimm and Anna E. Carpenter, a/k/a Annie E. Carpenter, and their unknown heirs, devisees, executors, administrators, relicts, next of kin and assigns."

{¶18} Appellees explained that they served the Notice of Abandonment by publication under R.C. 5301.56(E)(1) because "there was no record of any heirs, holders, or transferees in the Belmont County Public Records providing names or addresses of persons to serve with notice by certified mail." They alleged that that there were no transfers of record concerning the oil and gas interests after February 10, 1944 and there were no probate estates of record for Anna E. Carpenter, Charles R. Grimm, or Verna Grimm. They stated that they acted with due diligence in searching for holders to serve with the Notice of Abandonment.

{¶19} Appellees alleged that appellants filed their claims to preserve their interests on July 8, 2013, which was more than 60 days after the date when the Notice of Abandonment was published. They requested that the court declare that: the oil and gas reservation vested in them on April 30, 2012; the record of the reservation no longer serve as notice to the public of the existence of the interest; and the record of the interest no

longer be used as evidence in any Ohio court by the former holders' successors/assignees against surface landowners formerly subject to the interest.

**{¶20}** In Count 2, appellees alleged slander of title and fraud against Potomac, Robert and Wanda Milligan, and David and Virginia Cook, for recording their leases of the oil and gas interests while knowing that appellees owned all of those interests. They alleged the same against Attorney Schaffner as to his affidavit, which they averred was intentionally filed knowing it would cause Rice to withhold payments from appellees.

**{¶21}** Appellees alleged in Count 3 that Rice, Gulfport, and EQT Productions breached their oil and gas lease. Count 4 requested specific performance by Rice of its oil and gas lease with appellees and the payment of bonus and royalties.

**{¶22}** In Count 5, appellees requested a declaratory judgment that they completed the Notice of Abandonment process and were 100% owners of the oil and gas interests under the Property. They also requested that the court declare that no notice of record existed that appellants ever held interests under the Property and appellants must honor their lease and execute a deed to convey the interests.

**{¶23}** Count 6 stated claims for conversion, fraud and liquidated damages against some appellants. Count 7 requested injunctive relief and a constructive trust against Rice and Gulfport for withholding full payment of the bonus and royalties per the lease.

**{¶24}** Count 8 alleged MTA claims under R.C. 5301.47, et seq. Appellees averred that the severed minerals were vested in an unbroken chain of title for more than 40 years with a root deed filed for record on July 5, 1951 and the severed minerals and all royalty interests were extinguished and vested in appellees under R.C. 5301.47.

**{¶25}** Appellants filed an answer and a counterclaim. The heirs of Bessie Cook and Charles R. Grimm claimed that appellees published the Notice of Abandonment without including them, even though Charles R. Grimm's heirs were listed in his estate and identifiable in Belmont County records, which showed estates for the son of Charles R. Grimm, Charles W. Grimm, and his wife. They asserted that they were unaware of the Notice of Abandonment publication until 2013, and they immediately took action to preserve their interests. They requested that the court: quiet title to the oil and gas interests in their names; award damages for slander of title; issue an injunction barring

Case No. 21 BE 0046

appellees from leasing, conveying, or transferring rights to the oil and gas interests; find that appellees' claims were frivolous; and award attorney fees.

**{¶26}** On August 5, 2020, the trial court granted appellees' motion for default judgment against appellants Jeannie Marie Lee and L. Matthew Lee, and Yvonne M. Rinehart. On November 9, 2020, after a pretrial conference and agreement of the parties, the trial court entered default judgment against Robert A. Chaitlain, George Bolt, Betsy Jane Bolt, and the unknown heirs, administrators, next of kin, executors, successors, or assigns of Anna Carpenter, Charles R. Grimm, and Verna Grimm.

**{¶27}** On November 25, 2020, Gulfport filed a suggestion of bankruptcy and request for an automatic stay. The parties in this case agreed to the automatic stay due to the bankruptcy filing and later agreed that litigation in the instant case could proceed as provided in the court's entry regarding the stay.

**{¶28}** On July 23, 2021, appellees filed a motion for summary judgment. Appellants filed an opposition brief and filed for summary judgment on their counterclaims. After a hearing, the court granted in part and reversed in part appellees' summary judgment motion on October 14, 2021. The court granted summary judgment in favor of appellees on: Count 1 DMA claim; Count 5 declaratory judgment; and Count 8 MTA claim. The court sustained appellees' motion "as to the fifty-percent (50%) ownership and quieting title to one hundred percent (100%) of the oil and gas rights." The court denied the remainder of appellees' summary judgment motion and denied appellants' summary judgment motion.

**{¶29}** The court held a hearing on a proposed judgment entry and issued its journal entry with findings of fact and conclusions of law on November 10, 2021.

**{¶30}** On November 12, 2021, appellants filed their notice of appeal. They allege two assignments of error challenging the trial court's grant of summary judgment in favor of appellees under the DMA and the MTA.

### Summary Judgment Standard of Review

**{¶31}** An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we apply the same test as the trial court in determining whether summary judgment was proper.

**{¶32}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶33}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C).

**{¶34}** If the moving party meets its burden, the burden shifts to the non-moving party to set forth facts to show that there is a genuine issue of material fact. *Id*.; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶35}** In that appellants' second assignment of error is dispositive, we shall address it first. In their second assignment of error, appellants assert:

> **The trial court erred when it denied Appellants' motion for summary judgment and granted Appellee's[sic] motion finding that the oil and gas interests were extinguished pursuant to the Marketable Title Act.**

{¶36}  Appellants contend that appellees do not have a root deed which conveyed the oil and gas interests to them. They assert that when the root of title contains language that, on its face, excepts or reserves the oil and gas from the conveyance, it does not convey oil and gas interests and there is no marketable title to that interest. They submit that the MTA extinguishes severed mineral interests created before a surface owner's root of title to the property if the surface owner has a chain of title for 40 years or more after the prior mineral interest was created and there are no specific references to the prior interest in the surface owner's chain of title. They posit that if a specific reference to the mineral interest appears in the surface owner's chain of title, then those references are sufficient to preserve the prior interest.

{¶37}  Appellants quote the Ohio Supreme Court's three-part test in *Blackstone v. Moore*, 155 Ohio St. 3d 448, 2018-Ohio-4959, 122 N.E.3d 132, ¶ 12, for determining whether a mineral interest was preserved. The Court found that the following three-step inquiry is necessary to determine the preservation: "(1) Is there an interest described within the chain of title? (2) If so, is the reference to that interest a "general reference"? (3) If the answers to the first two questions are yes, does the general reference contain a specific identification of a recorded title transaction?"  *Id.* The Court held that if the reference to the interest is general, it is insufficient to preserve a mineral rights reservation. *Id.*

{¶38}  Applying *Blackstone* to the instant case, appellants assert that appellees' root of title is the 1976 Whaley Deed and it describes an interest in the chain of title as it states "[e]xcepting and reserving all the Pittsburgh #8 vein of coal and ½ of all oil and gas royalties under said lands together with mining rights and reservations made in the deed conveying said lands from Annie E. Carpenter to Bessie Cook." Appellants contend that the answer to the first question in the *Blackstone* query is therefore yes.

{¶39}  Appellants assert that the answer to the second question of the *Blackstone* query is also yes because the reference in the 1976 Whaley Deed is specific as to the type of interest and who originally reserved the interest. Since the interest is specific, appellants submit that the exception and reservation preserved their oil and gas interest.

{¶40}  Although they assert that they need not proceed to the third Blackstone query, appellants contend that appellees' root of title would fail here as well. Appellants

submit that the Whaley Deed specifically refers to a recorded title transaction, which is the "deed conveying said lands from Annie E. Carpenter to Bessie Cook." Appellants argue that appellees lack a clean root of title granting them an interest in the oil and gas because an abstractor would be directed by specific volume and page number first to 565/355, which is the Whaley Deed, the root of title deed, and it contains the reference to the Cook Deed. Appellants contend that the abstractor would then use the Grantor/Grantee (Direct/Indirect) indexes to find the reservation deed at 344/215, and then be directed to 344/208, which is the Grimm Deed.

{¶41} As to determining that the 1976 Whaley Deed is the root of title, appellants cite David v. Paulsen, 6th Dist. Ottawa No. OT-18-032, 2019-Ohio-2146, ¶ 20, and assert that the time when marketability is being determined is "the date a purportedly superior right in the property is sought to be enforced." They posit that this is the date that an action is filed for litigation purposes. Appellants state that the time period to apply the 40-year unbroken chain of title period begins with the root of title and ends at the time when marketability is being determined. Appellants calculate that the time of marketability is September 13, 2019, when appellees filed their complaint, so the root of title is the first deed prior to September 13, 1979. They submit that this is the 1976 Whaley Deed, which contains the oil and gas reservation. Appellants concede that even using appellees' filing of the Notice of Abandonment as the root of title (February 29, 2012), the root of title would be the first deed prior to April 17, 1972, which is the 1951 Dale Deed that contained the same reservation of oil and gas royalties as in the Whaley Deed.

{¶42} Appellants note that several title transactions occurred subsequent to the root of title, including the estates of Charles W. Grimm, Charlotte Grimm (Charles W. Grimm's wife), and Edith Cook (wife of Lowell Cook, who was the son of Bessie and Wiley Cook), whose heirs were transferred their real and personal property. Appellants also contend that the affidavits of preservation filed by their attorney under the DMA preserved their oil and gas interests under the MTA.

{¶43} Appellees contend that the root of title is the 1951 Dale Deed and the MTA extinguished any severed mineral interest 40 years after that Deed was received for record on July 5, 1951 since no claims were filed. They assert that Charles R. Grimm died on June 4, 1969 and did not hold his oil and gas interest for 40 years, and no successor

in interest filed evidence of a transfer or preservation of a claim to this interest. Appellees note that the successor in interest to Charles R. Grimm's interests was Mary Nelle Lindsley, who was appointed as Trustee for Charles R. Grimm's estate, and his estate was administered in Florida.

**{¶44}** Appellees also contend that even if Bessie Cook maintained a reservation, she conveyed her oil and gas interests away in the 1948 Doak Deed because she conveyed the Property without the reservation language that was present in the Cook Deed. They posit that Bessie could not re-reserve her oil and gas interest by filing the 1950 Doak II Deed as a corrective deed since she had already conveyed the land without the reservation and exception and the "corrective" deed was not signed by all of the parties to the Deed. Appellees contend that the root of title did not include the oil and gas interest since the interest was conveyed with the Property and appellees now own the Property.

**{¶45}** The MTA provides that "[a] person has such an unbroken chain of title when the official public records disclose a conveyance or other title transaction, of record not less than forty years at the time the marketability is to be determined, which said conveyance or other title transaction purports to create such interest" in the person or one of his predecessors in title "with nothing appearing of record to divest" him of the purported interest.  R.C. 5301.48. A marketable record title "operates to extinguish" all interests existing prior to the root of title. R.C. 5301.47(A), citing R.C. 5301.50.

**{¶46}** The root of title is the "conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E). Pursuant to R.C. 5301.50, and subject to R.C 5301.49, the record marketable title shall be held free and clear of all interests which depend upon events occurring prior to the effective date of the root of title.

**{¶47}** The exception and reservation language in both the 1951 Dale Deed and the 1976 Whaley Deed come from the 1950 Doak II Deed. The 1950 Doak II Deed was filed by Bessie and Wylie Cook "to correct" the 1948 Doak Deed, which conveyed the Property, but omitted the exception and reservation language from the Cook Deed.

{¶48} We find that the 1950 Doak II Deed could not "correct" the 1948 Doak Deed by adding the exception and reservation language concerning the oil and gas interests. The oil and gas interests that Bessie and Wylie Cook tried to re-reserve in 1950 had already been conveyed with the Property in 1948 to Dale and William Doak. Further, the 1950 Doak II Deed was signed by only Bessie and Wylie Cook. Thus, Bessie Cook's oil and gas interests were conveyed with the Property.

{¶49} Moreover, the exception and reservation language contained in both the 1951 Dale Deed and 1976 Whaley Deed is not the same as that contained in the Cook Deed or the Grimm Deed, although it is more consistent with the oil and gas interests excepted in the Grimm Deed. The Cook Deed stated that Anna Carpenter was "EXCEPTING AND RESERVING to the Grantor, herein, * * * one-half of all oil, gas, and royalties under the premises." In the Grimm Deed, Anna Carpenter conveyed a "one-half interest in the oil, gas and royalties underlying the Property" to Charles R. Grimm. The language in the Dale and the Whaley Deeds contained the same language as the 1950 Doak II Deed of "excepting and reserving all the Pittsburgh #8 vein of coal and ½ of oil and gas royalties under said lands together with mining rights and reservations made in the deed conveying said lands from Annie E. Carpenter to Bessie Cook." This language does not except and/or reserve the oil and gas interests, but rather excepts and/or reserves royalties from the oil and gas interests.

{¶50} In addition, the three-step inquiry in *Blackstone*, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, ¶ 12, leads us to find that the references to the oil and gas interests are general and therefore not preserved for appellants.

{¶51} The parties agree to the first prong of the *Blackstone* query that oil and gas interests were described in the chain of title.

{¶52} However, we answer the second *Blackstone* query in the negative because the references to the oil and gas interests are ambiguous and therefore general references. Again, the exception and reservation language in the 1951 Dale Deed and the 1976 Whaley Deed pertain to oil and gas royalties and not to the oil and gas interests themselves as stated in the Cook Deed. Further, the latter part of the exception and reservation language in both Deeds is ambiguous. The latter part of the 1951 Dale Deed and 1976 Whaley Deed excepts and reserves "mining rights and reservations made in

the deed conveying said lands from Annie E. Carpenter to Bessie Cook." This language could apply to mining rights and mining reservations, or mining rights and all of the other reservations made in the Cook Deed. Anna Carpenter included other exceptions and reservations in the Cook Deed that confirm this ambiguity. For example, Anna Carpenter excepted and reserved "all the Pittsburgh or No. eight seam of coal, together with the mining rights and privileges as heretofore conveyed" by prior grantors to a grantee in a deed dated July 16, 1906. Anna Carpenter also included language "further reserving from the operation" of a prior conveyance "all the oil, gas, or other minerals in or underlying" the Eighth Tract of land, "together with the right to operate the same, or to lease to others to operate for oil, gas or other minerals." Thus, the language used in the 1951 Dale Deed and the 1976 Whaley Deed, which refer to Anna's reservation in the Cook Deed, are ambiguous. Ambiguity is also supported by the fact that the parties in this case differ in their interpretation of the Cook Deed as to whether Anna conveyed the oil and gas to Bessie with the Property. "[T]he mere fact that the reference is susceptible to more than one interpretation is further evidence that the reference is general not specific." *See O'Kelley v. Rothenbuhler*, 7th Dist. Monroe No. 20 MO 0009, 2021-Ohio-1167, ¶47. Accordingly, we answer the second inquiry under *Blackstone* in the negative and find that the general references do not preserve appellants' interests.

**{¶53}** The MTA additionally extinguished oil and gas interests for the Grimm heirs because Charles R. Grimm died in 1969 and therefore did not maintain his oil and gas interests for 40 years. Further, neither the 1951 Dale Deed nor the Cook Deed referred to this interest and Charles R. Grimm's estate was administered in Florida, as both parties acknowledge. *See Lucas v. Whyte*, 7th Dist. Monroe No. 19 MO 0022, 2021-Ohio-222, ¶ 38 ("[w]ithout notice in the county in which the property is located, a title examiner would struggle with where to search for possible title transactions affecting the record chain of title. A probate certificate of transfer or an ancillary estate recorded in the county in which the property is located, for example, would put a title examiner on notice that there may be a title transaction in another county or another state that could affect the record chain of title."). And even if his interest was part of his estate, which was to be administered by Mary Nelle Lindsley as Trustee, it appears that she died on November 7, 2003 and no further information as to her estate distribution was offered. Further, neither Mary Nelle

Lindsley nor any representative are included in the claims in this case and default judgment was rendered against all unknown heirs on November 9, 2020.

**{¶54}** Based on the foregoing, we agree with the trial court that the MTA extinguished all of the oil and gas interests claimed by appellants.

**{¶55}** Accordingly, appellants' second assignment of error lacks merit and is overruled.

**{¶56}** In their first assignment of error, appellants assert:

> **The trial court erred when it denied Appellants' motion for summary judgment and granted Appellee's[sic] motion finding that the oil and gas interests were abandoned pursuant to the Dormant Minerals Act.**

**{¶57}** In that we find that the MTA extinguished all of appellants' interests, we need not decide their issues relating to the DMA. *See Pernick v. Dallas*, 7th Dist. Jefferson No. 21 JE 0011, 2021-Ohio-4635, ¶ 52-53 ("[T]he trial court's decision regarding the MTA was correct. This means the DMA issues are moot and this court will not address them.").

**{¶58}** Accordingly, appellants' assignment of error number one is overruled as moot.

**{¶59}** For the reasons stated herein, the trial courts judgment is affirmed.

Waite, J., concurs.
Robb, J., concurs

Case No. 21 BE 0046

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**